# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
September 18, 2001 Session

## STATE OF TENNESSEE v. BOBBY VINCENT BLACKMON

**Direct Appeal from the Criminal Court for Sumner County**
**No. 7994     Jane Wheatcraft, Judge**

---

**No. M2000-03149-CCA-R3-CD - Filed November 16, 2001**

---

In May of 1993, the Appellant, Bobby Vincent Blackmon, was indicted by a Sumner County grand jury for one count of class A felony possession of cocaine over 300 grams stemming from his involvement in a "reverse sting" drug operation. He was subsequently convicted in February of 1995. In 1998, the Tennessee Supreme Court granted Blackmon a new trial. *See* State v. Bobby Vincent Blackmon, 984 S.W.2d 589 (Tenn. 1998).[1]

In November of 1999, Blackmon was re-tried and again convicted of the offense of possession with the intent to sell over 300 grams of cocaine. After a sentencing hearing on May 17, 2000, the trial court sentenced Blackmon to thirty-eight years as a Range II offender and ordered his sentence be served consecutive to a prior first-degree murder conviction.

On appeal, the following issues are presented for our review: (1) whether Blackmon was denied effective assistance of counsel at trial; (2) whether the trial court erred by refusing to allow Blackmon to assert an "outrageous government conduct" defense, an entrapment defense and/or an impossibility defense; (3) whether the indictment in this case was fatally defective; and (4) whether the sentence was excessive. After review, we find no reversible error. Accordingly, the judgment of conviction and sentence is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and JERRY L. SMITH, J., joined.

Randy P. Lucas, Gallatin, Tennessee, for the Appellant, Bobby Vincent Blackmon.

---

[1]The principal issue before the supreme court was that of Blackmon's right to a constitutionally qualified judge at his jury trial. The supreme court found that the record did not support a valid waiver of this right. The judge who presided at Blackmon's jury trial had, previous to her election to the trial bench, conducted Blackmon's preliminary hearing as judge of the general sessions court.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth T. Ryan, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Dee David Gay, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

In 1993, Al Watson was employed with the Goodlettsville Police Department as an investigator in the vice unit of the department. Although his principal assignment was narcotics, in March of 1993, he was assigned to assist in the investigation of an auto theft ring in an undercover capacity. In this role, Detective Watson met Marty Jones who, over a period of time, sold Watson eighteen stolen vehicles. At a meeting between Jones and Detective Watson on March 3, 1993, regarding stolen vehicles, Jones asked Detective Watson if he was involved in any other "kinds of business." Detective Watson told him "that he had other interests" such as selling drugs, including marijuana, cocaine, and Dilaudid, but only in large quantities.

Several days later, on March 11, 1993, Jones contacted Detective Watson and advised him that he knew some individuals from Atlanta who wanted to purchase "ounces" of cocaine. Detective Watson explained that he did not deal in ounces and informed Jones that his price for one kilo of cocaine was $23,500. On Friday, March 19, 1993, Detective Watson met Jones and the Appellant at the Hee Haw Motel parking lot in Goodletsville. This was Watson's first encounter with the Appellant. At this meeting, Jones introduced the Appellant to Detective Watson as, "the middleman from Atlanta." Following further discussions of the proposed drug sale, Watson delivered to the Appellant an approximate one-half gram sample of cocaine obtained from the evidence vault at the police station. The Appellant asked Watson when they could do business. Detective Watson told the Appellant that he had just sold his last kilo of cocaine and that he had to travel to Florida over the weekend to secure another kilo. The three men agreed to meet at the Hee Haw Motel parking lot on Monday, March 22, 1993, at 8:00 a.m. for delivery of the one kilo of cocaine. On Sunday, March 21, 1993, Watson received a phone call from Jones who stated that the group didn't have all the cash; "[w]e've got $19,000 and the title to a truck." Watson agreed that he would accept the cash and title in exchange for the one kilo of cocaine.

On March 22, 1993, the SWAT team set up various surveillance points around the designated meeting area. Watson removed a kilo of cocaine from the evidence vault at the police station, placed it in a briefcase, and proceeded to the Hee Haw Motel parking lot. Watson had previously obtained permission from the District Attorney to utilize the drugs for purposes of the "reverse sting operation." After entering the Hee Haw Motel parking lot, Detective Watson met Jones and the Appellant, who arrived in the Appellant's Cadillac. Also present were the Appellant's associates, J.R. Russell, Sanky Morton and Tim Yaquinto. Russell and Morton arrived in one vehicle while Yaquinto arrived in a separate vehicle. Upon arrival, the Appellant and Jones walked over to Detective Watson's truck, at which time Watson opened the briefcase and showed them the kilo of

cocaine. Watson advised the Appellant that he needed the purchase money for the cocaine. The Appellant then walked to Yaquinto's vehicle and obtained a white envelope which he delivered to Detective Watson. The envelope contained $17,500 in cash and a title to an automobile. Jones, who remained with Watson during this time, then took the briefcase to Yaquinto's car. After counting the money, Watson then gave the "take-down" signal by stating, "[i]t was nice doing business with you." The SWAT team immediately moved in and arrested those at the scene.

Shortly after his arrest, Yaquinto admitted that he kept $1,500 of the transaction money. Yaquinto agreed to assist police in apprehending Randall Leonard, a principal member of the group from Atlanta who was to receive delivery of the cocaine after the completion of the initial purchase. Several hours after his arrest, Yaquinto called Leonard, told him that he had the kilo, and asked Leonard to meet him at the Hee Haw Motel. Leonard agreed and, upon delivery of the cocaine from Yaquinto, Leonard was arrested. Following the two cocaine deliveries on May 22, 1993, the Appellant, Joseph Martin Jones, Randall Leon Leonard, Sanky Morton, James Randall Russell and Timothy Yaquinto were indicted for class A felony possession of cocaine.[2]

During each of Watson's meetings with the Appellant and Jones, Watson was equipped with a "body wire" which permitted an audio recording of the conversations. Additionally, on March 22nd, the police were positioned in locations which permitted the videotaping of the Appellant's activities and involvement in the one kilo drug transaction. Both audio and video tapes were introduced at trial. Based upon this proof, the jury found the Appellant guilty of the indicted offense.

## ANALYSIS

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The Appellant argues that he received ineffective assistance of counsel at trial. The allegations of deficient representation of trial counsel were raised by way of argument at the Appellant's hearing on motion for a new trial.[3] No proof was presented to support the allegations. In this regard, we note that the practice of raising ineffective assistance of counsel claims on direct appeal is "fraught with peril" since it "is virtually impossible to demonstrate prejudice as required" without an evidentiary hearing. *See* Kirby George Wallace v. State, No. 01C01-9308-CC-00275 (Tenn. Crim. App. at Nashville, Sept. 15, 1994). Instead, "ineffective assistance of counsel claims should normally be raised by petition for post-conviction relief." State v. Derenzy Turner and

---

[2]The actual weight of the cocaine delivered in this case was 1045.4 grams. Testimony established that the street value of one kilo (2.2 pounds) of cocaine in the Nashville area in 1993 was between $23,000 and $28,500 and "as high as $30,000," depending upon availability.

[3]Trial counsel was originally appointed to represent the Appellant in 1993. As such, counsel participated in both the 1995 trial, its successful appeal to the supreme court, and the 1999 trial. Trial counsel was permitted to withdraw after the jury's verdict of guilty was returned in 1999, and substituted counsel was entered for purpose of appeal.

Vernon West, No. 02C01-9512-CR-00390 (Tenn. Crim. App. at Jackson, July 11, 1997), *perm. to appeal denied,* (Tenn. Feb. 23, 1998).

Nonetheless, to succeed on a claim of ineffectiveness, the Appellant must show, by clear and convincing evidence, that the services rendered by trial counsel were deficient and that, but for the deficient performance, the results of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *see* Tenn. Code Ann. § 40-30-210(f). This court need not review both elements if the petitioner has failed to prove one element; *i.e.,* if the petitioner has failed to prove the attorney's performance was deficient, this court need not decide if there was prejudice. *See* State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). In determining whether the Appellant received effective assistance of counsel, this court must remain mindful that it is not our function to second guess trial counsel's tactical and strategic choices on matters of defense, unless these choices are made without knowledge of the relevant facts or the law applicable to the issue. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); State v. Swanson, 680 S.W.2d 487, 490 (Tenn. Crim. App. 1984).

On appeal, the Appellant identifies the following areas of deficient representation by trial counsel:

> 1. failed to file in a timely manner important notices of the Appellant's potential defenses in this case;
>
> 2. counsel's total lack of preparation and consultation with the Appellant;
>
> 3. failed to file a timely motion to suppress the key evidence despite the discrepancies in [the] chain of custody and in the laboratory reports as to weight;[4] [and]
>
> 4. failed to develop a coherent defense strategy.

The trial court denied the Appellant's claims of ineffectiveness and found as follows:

> [Trial counsel] was very familiar with the case. . . . There had been a previous trial. There had been other communications with [the Appellant] by [trial counsel]. There had been a civil case. And I believe [the Appellant] - the record would show in this court that [the Appellant] had actually represented himself, but there had been discussion between him and [trial counsel].

---

[4]The Appellant's brief fails to make reference to that portion of the transcript demonstrating the discrepancy in the chain of custody of the evidence. As such, we find this issue waived. *See* Tenn. R. App. P. 27(g).

But [trial counsel] did file on November the 9th, 1999, a defendant's motion of intent to present entrapment before the court. He also filed a motion to dismiss alleging denial of [the Appellant's] right to procedural due process under the Fifth and Fourteenth Amendments. The court heard those motions.

Further, on November the 10th, 1999, [the Appellant] did file a motion to dismiss [trial counsel] as his attorney, which the court denied because [trial counsel] was in a unique position to know this case better than any other attorney would know.

[Trial counsel] did bring to this court a motion to dismiss based on outrageous conduct. He brought a motion to suppress. The court ruled on these motions.

He raised entrapment as an affirmative defense. He filed for entrapment as an affirmative defense.

[Trial counsel] did all those things he should do. He acknowledged that . . . his client on occasion had asked him to file motions that [trial counsel] . . . did not feel they should be filed and argued, and he acknowledged he didn't file every motion that Mr. Blackmon asked him to file.

But the court is of the opinion that he was effective counsel. He presented a defense. He knew the case best. He proceeded on what he, with [the Appellant], knew and proceeded to trial. I don't find that he was ineffective counsel.

The proof does not preponderate against these findings. With regard to the Appellant's claim that trial counsel failed to develop a "coherent defense strategy," we are provided no clue as to what effective strategy counsel could have devised. The jury was presented with both video and audio recordings of the Appellant's participation in the one kilo delivery on March 22nd. We believe the holding in Williams v. Beto, 354 F.2d 698, 706 (5th Cir. 1965) appropriate to the facts of this case; "[defense counsel] must decide as his knowledge, experience, and talents best permit and then move ahead. When he does this, that is all any lawyer can do, and the client has no right to complain of the absence of a miracle." From the record before us, we find that the Appellant has failed to satisfy the first prong of Strickland, *i.e.*, that counsel's performance was deficient. Having concluded that the Appellant failed to meet the first prong of this test, we need not address the second prong. Accordingly, we find this issue to be without merit.

## II. Jury Instructions

### A. Entrapment
The Appellant next asserts that the trial court erred by failing to charge the jury on the defense of entrapment. Specifically, he asserts that "the State first brought a drug transaction into its investigation of stolen automobiles" and "repeatedly refused to sell any weight of cocaine less than a kilo." Thus, the Appellant maintains, "this course of conduct by the State establishes a prima facie

case for entrapment and the jury should have been charged and allowed to consider this evidence to determine the Appellant's predisposition to commit the offense charged."

Both the history and current status of entrapment as a defense in Tennessee are set forth in State v. Shuck, 953 S.W.2d 662, 666 (Tenn. 1997):

> First recognized by the Supreme Court in Sorrells v. United States, 287 U.S. 435, 53 S. Ct. 210, 77 L. Ed. 413 (1932), the defense of entrapment has been described as "virtually unique to the criminal jurisprudence of the United States." United States v. Webster, 649 F.2d 346, 348 (5th Cir. 1981). . . . [T]he General Assembly, as part of the Criminal Sentencing Reform Act of 1989, codified all the available defenses to prosecution in Tennessee. Entrapment was included as a general defense to prosecution for all offenses. . . . *See* State v. Latham, 910 S.W.2d 892, 895-96 (Tenn. Crim. App. 1995).

In United States v. Russell, 411 U.S. 423, 93 S. Ct. 1637, 1647 (1973) (Stewart, J., dissenting), the United States Supreme Court reaffirmed Sorrells:

> In Sorrells and Sherman v. United States, 356 U.S. 369, 381, 78 S. Ct. 819, 825 (1958), the Court took what might be called a 'subjective' approach to the defense of entrapment. In that view, the defense is predicated on an unexpressed intent of Congress to exclude from its criminal statutes the prosecution and conviction of persons, 'otherwise innocent,' who have been lured to the commission of the prohibited act through the Government's instigation. Sorrells, 287 U.S. at 448, 53 S. Ct. at 215. The key phrase in this formulation is 'otherwise innocent,' for the entrapment defense is available under this approach only to those who would not have committed the crime but for the Government's inducements. Thus, the subjective approach focuses on the conduct and propensities of the particular defendant in each individual case: if he is 'otherwise innocent,' he may avail himself of the defense; but if he had the 'predisposition' to commit the crime, or if the 'criminal design originated with him, then-regardless of the nature and extent of the Government's participation-there has been no entrapment. Id. at 451, 53 S. Ct. at 216.

Likewise, in Hampton v. United States, 425 U.S. 484, 96 S. Ct. 1646 (1976), the Supreme Court again reaffirmed their adoption of the "subjective" approach to the defense of entrapment. To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. Russell, 411 U.S. at 429 (citing Sherman, 356 U.S. at 372).

There are two recognized tests for determining entrapment, the objective and subjective test. Shuck, 953 S.W.2d at 666. The objective test is the minority rule under which the fact finder focuses on the nature of the police activity involved, without reference to the predisposition of the defendant. Id. The subjective test is applied by a majority of jurisdictions and requires the fact finder to focus on

the subjective intent of the defendant to determine whether the defendant was predisposed to commit the criminal act, with law enforcement officials furnishing only the opportunity, or whether the defendant was an innocent person induced by police into committing a criminal offense. Id.; Latham, 910 S.W.2d at 896. As noted by the statutory language of the defense of entrapment, Tennessee adopted the subjective test. Tenn. Code Ann. § 39-11-505; *see also* Latham, 910 S.W.2d at 896.

Tennessee Code Annotated § 39-11-505 defines entrapment as follows: it is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so. Accordingly, we apply those principles established in Sorrells and its progeny in determining whether the defense of entrapment was available to the Appellant.

Tennessee Code Annotated § 39-11-203 provides that the existence of a defense is not submitted to the jury unless it is fairly raised by the proof. Moreover, Tennessee Code Annotated § 39-11-201(d) provides that evidence produced at trial, whether presented on direct or cross-examination of state or defense witness, may be utilized by either party. In this case, the Appellant relies solely upon the State's proof and the actions of the State's agent, Detective Al Watson, to support his assertion that he was the victim of entrapment. The Appellant did not testify at trial.

Initially, we note our rejection of an entrapment defense as a matter of law or right based solely upon the fact that a state agent furnishes, by means of sale or delivery, contraband to a defendant. The fact that the State furnished the contraband is a point of evidentiary value only. *See generally* Moore v. State, 534 So.2d 557, 559 (Miss. 1988). The threshold question of whether the defense of entrapment has been "fairly raised" is for determination by the judge and not the jury. Nonetheless, where the proof fairly raises the issue of entrapment, and the proof is supported by credible evidence, the trial court is required to give the instruction of entrapment whether requested or not. To determine when this statutory defense is fairly raised by the proof so as to require its submission to the jury, a court must, in effect, consider the evidence in the light most favorable to the defendant, including all reasonable inferences flowing from that evidence. *See* State v. Bult, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998), *perm. to appeal denied*, (Tenn. 1999) (citing State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993)). Thus, if entrapment is, in fact, "fairly raised by the proof," the issue of predisposition becomes a question of fact for the jury. *See also* Sherman v. United States, 356 U.S. at 377.

In the present case, we find that the trial court properly denied the Appellant's request for a jury instruction on the defense of entrapment. It is clear from the undisputed facts of this case that the Appellant was predisposed to commit the crime for which he is charged. It was the Appellant, the middleman from Atlanta, who approached Detective Watson in an attempt to purchase cocaine. During their first encounter, the Appellant indicated his desire to complete the one kilo drug purchase on a certain date and was rejected by Detective Watson. Upon learning that the cocaine was unavailable, it was the Appellant who requested another date to complete the transaction. It was the Appellant who obtained a sample of the cocaine for assurance of its quality. Again, it was the Appellant who established the "bottom dollar price" for the drugs. The proof established that, at one

point during the first encounter, Detective Watson told the Appellant, "[i]f you don't like it, you can go on your way and I'll go mine." On the date of the cocaine purchase, it was again the Appellant who approached Detective Watson. Finally, it was the Appellant who delivered the drug purchase money to Detective Watson, permitting transfer of the one kilo of cocaine. In sum, we conclude, as did the trial court, that the Appellant failed to establish a prima facie case of entrapment, *i.e.*, that he was induced or persuaded by law enforcement to commit the crime when he was not otherwise predisposed to do so. Accordingly, the trial court, as matter of law, properly declined to instruct the jury on entrapment.

Alternatively, the Appellant asserts that the actions of the State constituted the defense of "sentencing entrapment." As conceded in the Appellant's brief, such a defense is not recognized in Tennessee or found within the provisions of Tennessee Code Annotated § 39-11-505. *See also* United States v. Jones, 102 F.3d 804, 809 (6th Cir. 1996)(this court has never recognized sentencing entrapment as a basis for departure under the guidelines). As such, this issue is also without merit.

## B. Outrageous Government Conduct

The Appellant next asserts that the State-sponsored sale of cocaine was "outside the boundaries of the law [and] that the police do not have a license to commit crimes themselves." As such, the Appellant contends that he was entitled to assert an "outrageous governmental conduct" defense and that the refusal of the trial judge to so instruct was error.

In support of his position, the Appellant argues that Detective Watson's conduct violated Tennessee Code Annotated § 53-11-451(d)(4), because he failed to obtain prior court approval for law enforcement use of the cocaine. Tennessee Code Annotated § 53-11-451(d)(4) provides a method whereby police can be granted judicial authorization to use property which they have seized. Initially, we note that it is not entirely clear from the record that the cocaine in this case is governed by the provisions of this section. Tennessee Code Annotated § 53-11-451(d) applies to the disposition of goods which were previously seized incident to arrest, upon execution of a search warrant, or through other statutorily authorized means resulting in a criminal conviction or civil judgment in favor of the State. Through these civil or criminal judgments, the circuit or criminal court obtains jurisdiction over the property. *See* Tenn. Code Ann. § 51-11-451(b)(1)-(4), (d)(4).

The proof in this case established that the cocaine, approximately one kilo in weight, originated in Panama following the arrest of Manuel Noriega. At the time, Detective Watson served as liaison to the military and the federal drug enforcement agency, the latter being involved in the arrest of Noriega. The cocaine was released to Watson by authority of the Department of Defense and the Miami DEA for use by the Montgomery County, Tennessee, Judicial Drug Task Force, who loaned the cocaine to Sumner County. From these facts, we find that the cocaine remained under the jurisdiction of the federal government and, therefore, was not subject to the provisions of Tennessee Code Annotated § 53-11-451(d), as argued by the Appellant.

Also included as grounds for outrageous police conduct is the allegation that the State's agent, Watson, "committed a felony by providing a 'sample' of cocaine" to the Appellant. This argument

is misplaced. Tenn. Code Ann. § 53-11-410(c) specially grants immunity to authorized state, county, or municipal officers in possession of controlled substances where engaged in the lawful performance of such officers' duties. *See also* State v. Stoddard, 909 S.W.2d 454, 455 (Tenn. Crim. App. 1994); State v. Francisco, 790 S.W.2d 543 (Tenn. Crim. App. 1989). It is without dispute that on all dates pertinent to the sale or delivery of any controlled substance, Detective Watson was engaged in the lawful performance of his duties as a municipal officer with the Goodlettsville Police Department.

The Appellant argues that the trial court's refusal to provide him an "outrageous government conduct" defense which he also refers to as a "due process entrapment defense" constituted reversible error. As such, he argues that he was denied the opportunity "to allow the jury to decide whether he was predisposed to commit the offense charged or whether he was induced" by the State's illegal conduct. The Appellant's argument of inducement and predisposition based upon outrageous government conduct is flawed.

The Appellant erroneously merges, as is commonly done, the concepts of three separate defenses: (1) the defense of entrapment subjective test; (2) the defense of entrapment objective test; and (3) the "due process" entrapment defense. These three tests are distinct. Indeed, an outrageous government conduct defense may be successful even if the evidence establishes a predisposition to commit the crime. *See* United States v. Sneed, 34 F.3d 1570, 1576 (10th Cir. 1994). The entrapment defense utilizing the subjective test previously discussed, requires the jury to focus on the defendant's predisposition to commit the crime. The entrapment defense utilizing an objective test, however, focuses on the nature of the police activity involved, without reference to the predisposition of the defendant. Latham, 910 S.W.2d at 896.[5] The due process entrapment defense and its other accompanying labels of "outrageous government conduct" are rooted in the United States Supreme Court decision, United States v. Russell, 411 U.S. at 431-32, which in dicta, held:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction, the instant case is not of that breed.

(citations omitted); *see also* State v. Stephen Neil Kennedy, No. 02C01-9706-CC-00203 (Tenn. Crim. App. at Jackson, Apr. 8, 1998). While the defense of "due process entrapment," spawned by the dicta of Russell, remains a tenuous defense at best, no ruling of the United States Supreme Court has ever recognized this defense based solely upon an objective assessment of the government's conduct in inducing the commission of crimes. State v. Stephen Neil Kennedy, No. 02C01-9706-CC-00203 (Tenn. Crim. App. at Jackson, Apr. 8, 1998). In this regard, we note that the defense of entrapment in Tennessee is codified as a general defense and, if successful, would result in a verdict of not guilty. Whereas, an outrageous government conduct defense, based upon due process concerns, is not asserted as a "general" defense and, if successful, the remedy would be that of dismissal of the indictment, even

---

[5] With our enactment of the "subjective" test approach, this state implicitly rejected the "objective" test for entrapment.

if guilty of the offense charged. . . .  Tenn. Code Ann. § 39-11-505.  *See, e.g.*, <u>United States v. Tucker</u>, 28 F.3d 1420 (6th Cir. 1994); <u>United States v. Qaoud</u>, 777 F.2d 1105 (6th Cir. 1985).

In <u>United States v. Tucker</u>, 28 F.3d at 1422, the Sixth Circuit Court of Appeals expressly held that a defendant whose defense sounds in inducement may not avail himself of the "outrageous government conduct" defense.  Again, in <u>United States v. Warwick</u>, 167 F.3d 965, 974 (6th Cir. 1999), the Sixth Circuit held:

> Since <u>Tucker</u>, we have consistently rejected defendants' attempts to argue that the government's conduct in inducing them to commit the crimes charged was so outrageous as to deprive them of their constitutional rights. *See, e.g.*, <u>United States v. Rogers</u>, 118 F.3d 466, 473 (6th Cir. 1997) (noting that a defense that sounds in inducement is limited to entrapment and, under <u>Tucker</u>, does not implicate due process); <u>United States v. Branham</u>, 97 F.3d 835, 852 (6th Cir. 1996) (noting that <u>Tucker</u> "rejected the 'due process' defense sounding in inducement," and therefore refusing to consider the defendant's claim of outrageous government conduct).

Because we find the Appellant's defense "sounds in inducement," he may not avail himself of an outrageous government conduct defense.  Although we have concluded that the Appellant was not as a matter of law entitled to an "outrageous government conduct" defense, we are constrained to note that the State's conduct in this case falls far short of the definition of outrageous.  In <u>United States v. Russell</u>, 411 U.S. at 432, the Supreme Court recognized the ongoing and pervasive nature of illicit drug activity in our society:

> [I]n drug-related offenses law enforcement personnel have turned to one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices.  Such infiltration is a recognized and permissible means of investigation; if that be so, then the supply of some item of value that the drug ring requires must, as a general rule, also be permissible.  For an agent will not be taken into the confidence of the illegal entrepreneurs unless he has something of value to offer them.  Law enforcement tactics such as this can hardly be said to violate "fundamental fairness" or "shocking to the universal sense of justice."

Accordingly, we find the trial court's denial of this defense was not error.

### C. Impossibility

The Appellant contends that the trial court erred by failing to instruct the jury on the defense of impossibility.  Specifically, the Appellant argues that because he never had actual nor constructive possession of the cocaine, it was impossible for him to have committed the offense for which he was convicted.  The defense of impossibility is applicable only to inchoate offenses. *See generally* <u>Bandy v. State</u>, 575 S.W.2d 278 (Tenn. 1979).  Because the Appellant was not convicted of such an offense, this argument fails.  Moreover, with the adoption of the 1989 Criminal Code and the statutory

-10-

enactment of Tennessee Code Annotated § 39-12-101(a)(1), this state effectively abolished the defense of impossibility for the offense of criminal attempt. *See* State v. Elder, 982 S.W.2d 871, 875 (Tenn. Crim. App. 1998). Additionally, we would observe that prior to the enactment of the 1989 Criminal Code, our supreme court had rejected the legal impossibility defense in Bandy, 575 S.W.2d at 280. Accordingly, this issue is without merit.

### III. WHETHER THE INDICTMENT WAS DEFECTIVE

The Appellant argues that the indictment under which he was convicted is defective because it failed to allege that he committed the offense "knowingly." Specifically, he asserts that failure to include the culpable mental state of the offense in the indictment renders the indictment invalid and divests the court of jurisdiction of the case.

The Appellant was convicted of possession with intent to sell over 300 grams, an offense which requires a "knowing" mens rea pursuant to Tennessee Code Annotated § 39-17-417. The indictment, however, charged the following:

> [T]hat BOBBY VINCENT BLACKMON heretofore on or about the 22nd day of March, 1993, in the County and State aforesaid, did unlawfully and feloniously possess with intent to sell a controlled substance, to-wit: a quantity of cocaine, a Schedule II controlled substance, in excess of three hundred grams in violation of Tenn. Code Ann. § 39-17-417.

Under both the United States and the Tennessee Constitutions, a charging instrument, such as an indictment, must inform the accused of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Tennessee Code Annotated § 40-13-202, provides that an indictment must:

> [S]tate the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; and in no case are such words as "force or arms" or "contrary to the form of the statute" necessary.

At common law, pleading requirements for indictments were strict because the elements of criminal offenses were not easily ascertainable by reference to a statute. In State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997), however, our Supreme Court relaxed the stringent standards and held that an indictment is valid if it: (1) meets constitutional guarantee of notice; (2) complies with the statutory form and sufficiency of indictments; and (3) contains language from which the mental state may be logically inferred from the conduct alleged.

The language of the indictment alleges that the Appellant "did unlawfully and feloniously possess with intent to sell . . . a quantity of cocaine . . . in excess of 300 grams. . . ." A virtually

identical challenge is found in State v. Marshall, 870 S.W.2d 532, 538 (Tenn. Crim. App. 1993)(overruled on other grounds), *perm. to appeal denied*, (Tenn. 1993), where this court held that, "by alleging that the defendant possessed cocaine which he intended to sell, the indictment necessarily implied that it was a knowing possession." Applying this rationale in the present case, we find that the indictment contains language that can be logically inferred from the conduct alleged. *See* Hill, 954 S.W.2d at 727. Accordingly, we find the indictment valid. This issue is without merit.

## IV. SENTENCING

Lastly, the Appellant asserts that the trial court erred by beginning at the mid-point of the range in computing his sentence. The offense was committed in 1993. The trial court applied the sentencing law in effect at the time of sentencing in 2000. In 1995, Tennessee Code Annotated § 40-35-210(c), was amended to provide that the presumptive starting point for a class A felony would be at the midpoint of the range. Because application of the 1995 law would affect a substantial right of the Appellant, thus implicating *ex post facto* constitutional provisions, the trial court was required to apply the law in effect on the date the offense was committed. *See* State v. Moss, 13 S.W.3d 374 (Tenn. Crim. App. 1999).

Nonetheless, the Appellant bears the burden of establishing that the sentence imposed by the trial court was erroneous. State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Boggs, 932 S.W.2d 467, 473 (Tenn. Crim. App. 1996); State v. Fletcher, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991). When a defendant challenges the sentence imposed by the trial court, this court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d)(1997). This presumption is only applicable if the record demonstrates that the trial court properly considered relevant sentencing principles. Ashby, 823 S.W.2d at 169. In view of the sentencing error in this case, no presumption of correctness is afforded. Furthermore, in determining whether the Appellant has carried his burden, this court must consider the evidence received at the trial and the sentencing hearing, the pre-sentence report, the principles of sentencing, the arguments of counsel, the nature and characteristics of the offenses, existing mitigating and enhancing factors, statements made by the offender, and the potential for rehabilitation. Id.; Tenn. Code Ann. § 40-35-210.

In the present case, the Appellant was convicted of possession with the intent to sell over 300 grams of cocaine , a class A felony. Tenn. Code Ann. § 39-17-417(a)(4),(j)(5). Because the Appellant is a Range II offender, the range of punishment is 25 to 40 years. Tenn. Code Ann. § 40-35-112(b)(1). Furthermore, the presumptive sentence would be the minimum sentence in that range if there are no enhancing or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). If there are both enhancing and mitigating factors present, the trial court must "enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e). The Appellant's sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years. Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes

and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Boggs, 932 S.W.2d at 475. The weight to be afforded mitigating and enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved. Boggs, 932 S.W.2d at 476; *see also* Marshall, 870 S.W.2d at 541 (overruled on other grounds).

In the present case, the trial court applied three enhancement factors: (1) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (2) the defendant was a leader in the commission of an offense involving two or more criminal actors; and (3) the offense was committed while the defendant was on parole. Tenn. Code Ann. § 40-35-114(1), (2), (13). The only sentencing mitigator found by the trial court was that the Appellant did not resist arrest.

With respect to enhancement factor (1), the Appellant's past criminal history includes burglary, larceny, first-degree murder, robbery with a deadly weapon, escape from the Tennessee Department of Correction, and a robbery conviction in California. We find the Appellant's past criminal history to be extensive and conclude that enhancement factor (1) was properly applied. With respect to enhancement factor (2), we also find that the evidence supports the trial court's application of this factor. Marty Jones informed Detective Watson that he had a "group from Atlanta" who was interested in purchasing cocaine. Jones connected Detective Watson and the Appellant, who became the central figure in the transaction in Sumner County. The record supports the finding that the Appellant was a leader in the commission of the offense. Lastly, with respect to enhancement factor (13), the Appellant was on parole for a first-degree murder conviction committed in Shelby County when he committed the offense in the present case. This factor was also properly applied.

The Appellant does not contest the application of the trial court's enhancement or mitigating factors. Rather, he only complains of the trial court's error in beginning at the mid-point of the range. After a *de novo* review of the entire sentencing record, we find that the three aggravating factors significantly outweigh the sole non-enumerated mitigator, which we afford little weight. Accordingly, we conclude that a sentence of 38 years is justified in this case.

### CONCLUSION

We find that the trial court erred by beginning at the mid-point of the sentence range. After *de novo* review of the applicable enhancement and mitigating factors; however, we conclude that a sentence of 38 years, as a Range II offender, for possession with intent to sell over 300 grams of cocaine is an appropriate sentence in this case. We find all other issues raised to be without merit. The judgment of the Sumner County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE