# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
November 13, 2013 Session

## STATE OF TENNESSEE v. JOSEPH E. RAINEY

**Appeal from the Circuit Court for Perry County**
**No. 2010-CR-30      Donald P. Harris, Judge**

---

**No. M2012-02408-CCA-R3-CD - Filed March 11, 2014**

---

A jury convicted the defendant of two counts of the delivery of dihydrocodeinone, a Class D felony, and one count of the casual exchange of marijuana, a Class A misdemeanor, in violation of Tennessee Code Annotated sections 39-17-417 and -418 (2009). The trial court sentenced the defendant to three years of probation for each conviction for delivery of dihydrocodeinone and to eleven months and twenty-nine days of probation for the marijuana conviction, with all the sentences to be served concurrently. The defendant hired a new attorney to file his motion for a new trial, and his new attorney challenged the trial court's denial of a continuance prior to trial. New counsel also asserted that the defendant had received the ineffective assistance of counsel. The trial court denied the motion for a new trial. We discern no error and accordingly affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Joe Hinson (at trial), Hohenwald, Tennessee, and Douglas Thompson Bates, IV (at motion for new trial and on appeal), Centerville, Tennessee, for the appellant, Joseph E. Rainey.

Robert E. Cooper, Jr., Attorney General & Reporter; Brent C. Cherry, Senior Counsel; Kim Helper, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The defendant was arrested after a confidential informant working with law

enforcement bought controlled substances from the defendant on two occasions in August 2009. The defendant was indicted on three counts of delivery of dihydrocodeinone, one of which was subsequently dismissed, and on one count of the casual exchange of marijuana.

The case was set for trial on November 10, 2010, but trial was postponed due to the defendant's illness. The case was reset for May 12, 2011, but the first attorney representing the defendant was permitted to withdraw on April 25, 2011. The defendant was then found indigent, and Joe Hinson was appointed as his attorney. The case was set for trial on November 9, 2011. To accommodate the defendant's health issues, the trial was reset to January 26, 2012. On the day of trial, the defendant failed to appear[1] and was subsequently taken into custody. The trial was rescheduled for February 9, 2012. On February 8, 2012, new counsel, Douglas T. Bates, IV, emailed the Assistant District Attorney General, explaining that the defendant's family had that day asked him to represent the defendant; new counsel wanted to know if the State would oppose a continuance. The State informed new counsel that it would, in fact, oppose a continuance. New counsel also emailed the trial court, noting that if a continuance was not granted, new counsel would not agree to represent the defendant. The trial court ordered the trial to go forward as scheduled, "[b]ased on the history of the case." Accordingly, the defendant was represented by his appointed attorney at trial.

At trial, the confidential informant, Joe Calvert, and the officers working with him testified that on August 18, 2009, Mr. Calvert was issued $140 to buy Lortab pills from the defendant. Prior to the arranged meeting, Mr. Calvert attempted to call the defendant two times, but got no answer; however, officers had seen the defendant standing outside his home on their way to meet Mr. Calvert. An audio recording device was attached to Mr. Calvert, and, as his driver's license was suspended, he was driven to the defendant's home by Agent Scott Jones. Agent Jones remained in the vehicle, posing as Mr. Calvert's brother-in-law, while Mr. Calvert entered the house.

On the audio recording of the August 18, 2009 transaction, Mr. Calvert asked the defendant if he had "them," to which the defendant responded that he would need to make a thirty-minute trip to retrieve them and that a third party had called twice to see if he was coming. The defendant also noted that he had three times been unable to reach Mr. Calvert by phone. The defendant came to the vehicle where Mr. Calvert and Agent Jones were and confirmed that Mr. Calvert wanted twenty. After the defendant left the vehicle, Agent Jones stated on the recording the defendant was holding the money in his hand. The defendant left with another man, who was later revealed to be Willie McComas. Mr. Calvert informed law

---

[1] According to an email sent by the defendant's new counsel, the defendant ascribed his failure to appear to further health problems.

enforcement that the defendant intended to drop Mr. McComas off, and when Agent Joe Ashmore began to follow the vehicle further down the road, the defendant was the only person inside. Agent Ashmore followed the vehicle to and from another location.

When the defendant returned, the first thing he told Mr. Calvert was that the third party did not have "tens," which testimony established referred to the strength of the active ingredient in the pills. He offered Mr. Calvert eight pills of a lesser strength at $5 each and told him he could, as an alternative, wait for the pharmacy to open the next day and give the source of the pills a cash advance to buy pills of the higher strength. The defendant returned $100 of the money issued by law enforcement. Mr. Calvert then asked if the defendant would have "his," meaning his own prescribed pills, on August 25th, and the defendant corrected him to say he would have them the 26th. According to plans made with law enforcement while the defendant was retrieving the pills, Mr. Calvert then said, "You said you might be able to get me something to smoke." The defendant stated that he had not asked the third party. However, the defendant then volunteered that he had some marijuana for $20. He then, according to testimony, sold Mr. Calvert a bag of marijuana. After the car started up, the defendant came to Agent Jones's window and told him, "Try that pot. If you like it, I can get some more." On the way out, Agent Jones stated on the recording that he was able to observe Mr. McComas standing in the yard of a nearby house.

On August 26, 2009, the day the defendant had told Mr. Calvert that his prescription would be ready, agents conducted another controlled buy. Once again, they were unable to reach the defendant by phone. Once again, Agent Jones drove Mr. Calvert, fitted with audio recording equipment, to the defendant's home. This time, Agent Jones did not interact with the defendant, but saw Mr. Calvert and the defendant walk around the outside of the defendant's home and then enter the home. Mr. McComas was outdoors but not involved in the conversation between the defendant and Mr. Calvert.

In the audio recording, the defendant confirmed that he had gotten his "stuff," and he told Mr. Calvert he would swap "$100 worth" in exchange for Mr. Calvert clearing his fields. Mr. Calvert agreed to clear the fields only as part of a separate, cash transaction. The defendant stated that he had ninety but everybody had been "wanting them," and he estimated he had thirty left. The defendant also implied that he had been giving away the pills in exchange for sex. The audio reveals the sound of pills dropping and the defendant stating he has thirty-two, and then Mr. Calvert counting first $100 and then twenty pills. Mr. Calvert ultimately returned to the vehicle with twenty pills.

At trial, defense counsel thoroughly cross-examined Mr. Calvert, whose prior criminal record presumably rendered him less sympathetic and trustworthy to the jury. Mr. Calvert was a convicted sex offender, having been convicted of two counts of attempted aggravated

sexual battery, violating parole twice, writing worthless checks, failing to alert the sex offender registry of his change of address three times, and violating hunting laws, in addition to the seatbelt violation that resulted in his suspended license. According to Mr. Calvert, he decided to work as a confidential informant out of pure altruism, because he did not like for people to sell drugs around him. He denied working with the hope of attaining leniency for his charges and testified he did not receive any consideration, although he acknowledged that he had received the statutory minimum sentence for his three violations of the sex offender registry requirements. This testimony was in contrast to that of Agent Ashmore, who testified that Mr. Calvert was to receive leniency for pending charges in exchange for cooperating with the investigation, although Agent Ashmore also testified that Mr. Calvert ultimately did not receive anything due to an intervening arrest. Mr. Calvert denied giving drugs to the defendant or purchasing drugs from Mr. McComas.

The defendant, who was seventy-one years old at the time of trial, testified and denied committing the crimes. Citing his age and health problems, the defendant testified that he had hired several people, including Mr. McComas, to help on his farm. According to the defendant, he used stimulus funding, which placed restrictions on his hiring, and all his applicants were drug users or drug dealers. The defendant offered two alternate explanations of his role in the transactions. First, he testified that Mr. McComas had been selling Mr. Calvert drugs, that Mr. Calvert arrived to buy drugs from Mr. McComas, and that Mr. McComas asked the defendant to bring the Lortab and marijuana, both of which belonged to Mr. McComas, from the table to Mr. Calvert's car. The defendant felt that he had no choice because he needed Mr. McComas to help run the farm and because Mr. Calvert was, regardless, regularly buying drugs from Mr. McComas. He also explained that he took Mr. McComas to the third party's home, where Mr. McComas bought drugs but where he himself merely consulted the man, who was a good mechanic, regarding an engine in his truck.

Later, the defendant repudiated this testimony and instead testified that he did not recall any of the interactions recorded by law enforcement and that if he had carried the drugs to the car, he was not aware of it. The defendant testified that he did not recall Agent Jones, despite his good memory for faces, and that he was "groggy" during the time in question. The defendant claimed that Mr. Calvert had drugged him, alleged he had a witness to the drugging, and speculated that Mr. Calvert had "set him up" to keep him quiet because he knew too much about doctors in Perry County who were unethically prescribing drugs. He acknowledged that his voice was on the audio recordings and acknowledged that he had a prescription for Lortab which he regularly filled but did not consume, but he claimed he filled this prescription only to prove a point about how easy it was to obtain the medication. The jury found the defendant guilty on all three counts.

After the trial, the defendant hired new counsel. New counsel then filed a motion for

-4-

a new trial, asserting that the trial court had erred in denying the motion for a continuance and that trial counsel had been ineffective in failing to assert an entrapment defense.

At the hearing on the motion for a new trial, appellate counsel called trial counsel to testify in order to provide a factual basis for the claim that the defendant had received the ineffective assistance of counsel. Trial counsel testified that he met with the defendant twice prior to trial for about an hour each time. He went over discovery with the defendant, but did not play the audio recordings, which the defendant had previously heard with his former attorney. Trial counsel testified he believed the audio recordings were very incriminating, and the only "ray of sunshine" available to the defendant was jury nullification. At the defendant's behest, trial counsel had researched case law and statutory law regarding the possibility of an entrapment defense, but opted not to pursue it because he did not think that it was supported by the law and the facts. On the morning of the trial, trial counsel asked to withdraw from the case because the defendant and his daughter wanted to hire new representation, and he asked the court to grant a continuance to allow new counsel time to prepare the case. At the time, he believed that the defendant's daughter had drafted a complaint against him to the Board of Professional Responsibility. The trial court had declined to grant either the continuance or withdrawal, and the trial went forward.

The trial court concluded that it had not erred in denying the continuance, particularly in light of the fact that the motion for a continuance made no mention of the entrapment defense. Furthermore, the trial court found that trial counsel did not perform deficiently, as the proof at trial did not support an entrapment defense. Describing the case as "among the strongest cases that I've ever seen," the judge noted that the defendant had volunteered to go to the third party to obtain drugs and that he had initiated the second transaction by noting he would have more pills when his prescription was filled on August 26th. The trial court concluded from the bench that the defendant in any case suffered no prejudice.

On appeal, the defendant asserts: (1) that the defendant was denied the effective assistance of counsel because trial counsel chose not to pursue an entrapment defense; and (2) that the trial court erred in denying the continuance which would have allowed the defendant to change attorneys and to assert an entrapment defense.

## ANALYSIS

### I. Ineffective Assistance of Counsel

The defendant asserts that he received the ineffective assistance of counsel at his trial because his trial counsel elected not to pursue a defense of entrapment. Generally, claims of ineffective assistance of counsel are best brought in a post-conviction petition. This is

because "the practice of raising ineffective assistance of counsel claims on direct appeal is 'fraught with peril' since it 'is virtually impossible to demonstrate prejudice as required' without an evidentiary hearing." *State v. Blackmon*, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001) (quoting *Wallace v. State*, No. 01C01-9308-CC-00275, 1994 WL 504401, at *3 (Tenn. Crim. App. Sept. 15, 1994)). Furthermore, an issue decided on direct review is considered previously determined for the purposes of post-conviction relief if there has been a ruling on the merits after a full and fair hearing. *See* T.C.A. § 40-30-106(f), (h). In this case, appellate counsel attempted to provide the factual basis for the claim by calling trial counsel to testify at the hearing on the motion for a new trial. The defendant did not himself testify regarding trial counsel's representation.

To establish ineffective assistance of counsel, the defendant must show both that counsel's performance was deficient and that the deficiency resulted in prejudice. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Prejudice is established where the accused can show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694).

The right to counsel guaranteed under the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution is the right to the reasonably effective assistance of counsel. *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006). Counsel's representation must be "within the range of competence demanded of attorneys in criminal cases." *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008) (quoting *Strickland*, 466 U.S. at 687). Counsel may not, through incompetence, deprive a criminal defendant of a substantial defense, but must investigate all apparently substantial defenses and properly assert them. *Id.* "And if counsel's choices not to raise substantial defenses are professionally unreasonable 'considering all the circumstances,' counsel's performance is deficient." *Id.* (citing *Strickland*, 466 U.S. at 688). In evaluating deficiency, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance. *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quoting *Strickland*, 466 U.S. at 690-91). The deference given to counsel's choice of strategy and tactics applies only if the choices are informed ones and if they are based upon adequate preparation. *Goad*, 938 S.W.2d at 369. "The overall standard by which effective assistance of counsel is judged is 'whether counsel's conduct so undermined the proper functioning of

the adversarial process that the trial cannot be relied on as having produced a just result.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 686).

The trial court found that trial counsel was not deficient in neglecting to pursue an entrapment defense because the proof at trial did not support the defense; furthermore, the trial court concluded that, based on the strength of the case, the defendant suffered no prejudice. Under Tennessee Code Annotated section 39-11-505, "[i]t is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so." The test for entrapment is a subjective one, focusing on the predisposition of the accused to commit the crime at hand. *Blackmon*, 78 S.W.3d at 331. In other words, the defense applies if the finder of fact determines that law enforcement ensnared the "unwary innocent" rather than the "unwary criminal." *Id.* at 330. Accordingly, "inducement and predisposition are the crucial factors for consideration." *State v. Shuck*, 953 S.W.2d 662, 666 (Tenn. 1997). Procedurally, a defendant intending to rely on a defense of entrapment is required to give notice to the prosecution. T.C.A. § 39-11-505. The trial court must then make a threshold determination regarding whether the defense has been fairly raised by the proof and ought to be submitted to the jury. *State v. Latham*, 910 S.W.2d 892, 896 (Tenn. Crim. App. 1995); T.C.A. § 39-11-203(c). In doing so, the trial court must view the evidence in the light most favorable to the defendant, drawing all reasonable inferences therefrom. *Blackmon*, 78 S.W.3d at 331; *State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). "Nonetheless, where the proof fairly raises the issue of entrapment, and the proof is supported by credible evidence, the trial court is required to give the instruction of entrapment whether requested or not." *Blackmon*, 78 S.W.3d at 331. If the proof fairly raises the defense, the matter of the defendant's predisposition becomes a question of fact for the jury. *Id.*

> Factors relevant to determining a defendant's predisposition include the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by law enforcement officials; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense which was overcome only by repeated inducement or persuasion by law enforcement officials or agents; the nature of inducement or persuasion engaged in by law enforcement officials; and any other direct or circumstantial evidence that the accused was ready and willing to engage in the illegal conduct in question.

*Shuck*, 953 S.W.2d at 670.

The trial court, however, is not required to give the instruction if "[i]t is clear from the undisputed facts of th[e] case that the [defendant] was predisposed to commit the crime for which he is charged" or if the defendant otherwise fails to establish a prima facie case. *Blackmon*, 78 S.W.3d at 331-32.

Here, we agree with the trial court that the defendant has established neither deficiency nor prejudice. The testimony from the hearing on the motion for a new trial makes it clear that trial counsel investigated the possibility of an entrapment defense. Counsel testified that he researched both the statute and case law regarding entrapment and that he made a strategic decision not to pursue the defense because he did not think it was supported by the facts or law. Instead, he chose to rely on highlighting the unsavory character of the confidential informant and the age and relative frailty of the defendant to garner sympathy. Although counsel chose to forego the defense, we cannot say that this was "professionally unreasonable" given the strong evidence of the defendant's predilection for committing the crimes in question, including the fact that he had already distributed fifty-eight of his ninety prescribed pills within the community when law enforcement made a controlled buy on the day that the defendant filled his prescription. *See Pylant*, 263 S.W.3d at 868. Nor did the decision to forego the defense "so undermine[] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *See Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 686). When trial counsel's performance has fallen within the range of reasonable professional assistance, "the client has no right to complain of the absence of a miracle." *Blackmon*, 78 S.W.3d at 329 (quoting *Williams v. Beto*, 354 F.2d 698, 706 (5th Cir. 1965)).

Nor can the defendant show any prejudice. While the police and confidential informant did go to the defendant's home and did purchase drugs, nowhere on the recordings does law enforcement persuade or induce the defendant. Instead, the defendant, who was selling his (and others') medication for profit, never expressed reluctance and in fact demonstrated that he was predisposed to commit the crimes. Although there is no record of how the defendant and Mr. Calvert initially became involved in a sale of drugs, the audio recordings show that the defendant had been awaiting Mr. Calvert and had tried to contact him by phone in order to complete the August 18, 2009 transaction. The defendant was not a passive participant but drove to a separate location to retrieve the pills, and when they were not of the desired strength, he volunteered a plan by which Mr. Calvert could get stronger pills the following day. After selling the marijuana to the confidential informant, the defendant spontaneously approached Agent Jones, exhorted him to try the drug, told him he could get him more, and described his own experience smoking it. Most damningly, on August 26, 2009, the defendant is recorded explaining that, though his prescription for ninety pills had been filled only that day, he had a mere thirty-two pills left, because everybody had

-8-

been "wanting them." The defendant implied that he had also traded the medication for sex.

Although the defendant, in his first version of events, testified that he felt coerced into delivering Mr. McComas's drugs because he was frail and needed Mr. McComas's help on his farm, inducement by a private individual does not establish a defense of entrapment. *See Shropshire*, 874 S.W.2d at 638-39. There is no allegation that Mr. McComas was working for law enforcement.

The only testimony supporting a defense of entrapment was the defendant's assertion that the confidential informant, who was acting as an agent of law enforcement, had drugged him, rendering him "groggy" and unable to remember any of the events on the audio recordings. This testimony was in direct contradiction to another version of events to which the defendant had testified moments before: that he recalled the transaction, that he had brought the drugs to Mr. Calvert, but that the drugs were not his, and he had delivered them only due to Mr. McComas's coercion. The audio recordings, in which the defendant appears to be alert and jocular, also cast doubt on this version of events. However, even if we were to conclude that the question was fairly raised and could have been submitted to the jury, the defendant cannot show a reasonable probability that, but for a failure to raise the defense, the result of the trial would have been different. The evidence against the defendant was overwhelming, the audio recordings show a clear predilection to commit the crimes, and the testimony supporting the defense was relatively weak and clearly self-serving. Accordingly, we agree with the trial court that the defendant suffered neither from deficient representation nor from prejudice.

## II. Denial of Continuance

The defendant also asserts that the trial court abused its discretion by denying his request for a continuance and that his consequent inability to put on an entrapment defense resulted in his conviction. The denial of a motion for a continuance rests within the trial court's discretion. *State v. Schmeiderer*, 319 S.W.3d 607, 617 (Tenn. 2010). Generally, an abuse of discretion occurs when the trial court applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Hester*, 324 S.W.3d 1, 35 (Tenn. 2010). More particularly, when error is predicated on the denial of a continuance, "[a]n abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted." *Schmeiderer*, 319 S.W.3d at 617 (quoting *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995)). When the defendant asserts that the denial of the continuance cost him the effective assistance of counsel under the Sixth Amendment, he must establish actual prejudice. *Id.*; *see State v.*

*Odom*, 137 S.W.3d 572, 589 (Tenn. 2004) (finding no abuse of discretion in denying a continuance for psychological testing when there was "no indication that [the defendant] was denied a fair trial or that the result of the proceeding would have been different had a continuance been granted"). "[T]he defendant bears the burden of showing that harm resulted from the denial of the requested continuance." *State v. Vaughn*, 279 S.W.3d 584, 598 (Tenn. Crim. App. 2008).

Although, "our system of justice has been reluctant to force a lawyer on an unwilling client," *Lovin v. State*, 286 S.W.3d 275, 285 (Tenn. 2009), the right to retain counsel of the defendant's own choice is not absolute and may not be used to obstruct orderly procedure; instead, it must be balanced against the public's interest in "the dispensation of justice that is not unreasonably delayed," *State v. Zyla*, 628 S.W.2d 39, 42 (Tenn. Crim. App. 1981) (quoting *United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978)).

> Once a fair and reasonable initial opportunity to retain counsel
> has been provided, and adequate counsel obtained, the court,
> mindful of the accused's interest in having counsel in whom he
> has confidence, is free to deny a continuance to obtain additional
> counsel if, upon evaluation of the totality of the circumstances,
> it reasonably concludes that the delay would be unreasonable in
> the context of the particular case.

*Zyla*, 628 S.W.2d at 42 (quoting *Burton*, 584 F.2d at 490).

The crimes in question were committed in August of 2009, and the trial was originally scheduled for November 2010. After some delays, trial counsel was appointed to represent the defendant on April 25, 2011. The trial was again delayed, and after the defendant's failure to appear, it was rescheduled for February 9, 2012. The defendant's family broached a change of attorneys on the day prior to trial. The trial court was well within its discretion to deny this last-minute motion to delay a case which had been awaiting trial for over two years and which had been rescheduled numerous times. Furthermore, the trial court noted that it did not want to unduly delay trial because the defendant, due to his failure to appear, remained in custody.

Moreover, the defendant cannot show actual prejudice. Trial counsel vigorously cross-examined the State's witnesses, and the defendant makes no allegation that he was denied a fair trial. Nor can it be reasonably concluded that a different result would have followed had the continuance been granted. Unrelated to any purported deficiency in the performance of trial counsel, the defendant would have to show "that it could be reasonably concluded that a different result would have followed had the continuance been granted."

*Schmeiderer*, 319 S.W.3d at 617 (quoting *Hines*, 919 S.W.2d at 579). As we concluded above, however, the defendant cannot establish prejudice. The case against the defendant was extremely strong, and the only support for the entrapment defense was the defendant's testimony that he had been drugged – testimony which he himself had earlier contradicted by acknowledging a recollection of the delivery of the pills (ostensibly for Mr. McComas) and testimony which was belied by the defendant's alert manner in the audio recordings. It cannot be reasonably concluded that a different result would have followed if trial counsel had pursued the defense.

This Court has held that there was no abuse of discretion in analogous cases where the defendant waited until the eve of trial to attempt to switch attorneys, was denied a continuance, and then asserted ineffective assistance of counsel. *State v. McMurray*, No. E2011-00720-CCA-R3-CD, 2012 WL 5309440, at *6-8 (Tenn. Crim. App. Oct. 26, 2012) (finding no abuse of discretion in denying continuance when the defendant, who had been represented by the same attorney for six months and had been out of custody for thirty days, moved for a continuance to retain new counsel on the morning of trial, and when the trial court concluded that trial counsel's failure to move for a dismissal was not deficient or prejudicial); *Zyla*, 628 S.W.2d at 42 (concluding there was no abuse of discretion in denying a continuance when the trial had been set for four months, but the defendant did not ask for a continuance until the morning of trial); *see also Austin v. State*, No. W2003-01312-CCA-R3-PC, 2004 WL 1533948, at *5-7 (Tenn. Crim. App. July 8, 2004) (concluding that a post-conviction petitioner was not denied the effective assistance of counsel because the trial court denied his motion for a continuance, where the petitioner had been represented by the public defender, the petitioner had had four months to hire private counsel, the petitioner had waited until the night before trial to hire an attorney and until the day of trial to request a continuance, and the petitioner's new counsel was assisted substantially by the public defender, who was familiar with the case).

## CONCLUSION

The decision not to pursue an entrapment defense did not constitute ineffective assistance of counsel, and the trial court did not abuse its discretion in denying the defendant's motion for a continuance; accordingly, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE