IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2002

## STATE OF TENNESSEE v. ANGELA CAPRICE PARCHMAN

**Direct Appeal from the Circuit Court for Obion County**
**No. 1-22    William B. Acree, Jr., Judge**

_____

**No. W2001-02301-CCA-R3-CD  - Filed February 12, 2003**

_____

The appellant, Angela Caprice Parchman, was convicted by a jury in the Obion County Circuit Court of the sale of .5 grams or more of crack cocaine, a Class B felony.  The trial court sentenced the appellant as a Range II multiple offender to twelve years incarceration in the Tennessee Department of Correction.  On appeal, the appellant argues that the evidence was insufficient to support her conviction and that her trial counsel was ineffective.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Didi Christie, Brownsville, Tennessee (on appeal) and Joseph P. Atnip, Dresden, Tennessee (at trial), for the appellant, Angela Caprice Parchman.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I.  Factual Background

John C. Dunlap was stopped by officers with the Union City Police Department for driving under the influence and possession of drug paraphernalia.  In order to avoid being charged with these offenses, Dunlap agreed to "cooperate" with Lieutenant Rick Kelly and Officer Jeff Jackson in "undercover drug deals" targeting the appellant.  On September 14, 2000, Dunlap met with the officers who placed a wireless transmitting device on Dunlap and provided him with five twenty-dollar bills that had been photocopied to record their serial numbers.  After searching Dunlap and his vehicle to ensure that he had no drugs or money of his own, the officers instructed Dunlap to drive to the appellant's residence at 212 North Dobbins and attempt to purchase crack cocaine.

The officers followed Dunlap to the appellant's house and monitored the transaction on a "receiver unit."

The drug transaction was completed with little conversation. As Dunlap entered the house, the appellant told Dunlap he would have to be searched and the officers heard "someone patting [Dunlap] down." The officers then heard Rhonda Swift, who was present during the transaction, ask Dunlap for a "hit," but Dunlap responded that he was leaving for Memphis. After Dunlap exited the house, he informed the officers, "I've got the two rocks. They're in my mouth, and I'm headed back." The officers followed Dunlap back to the original meeting place where they searched Dunlap and his vehicle a second time, recovering two bags containing what appeared to be crack cocaine. The officers then provided Dunlap with additional money to attempt a second purchase, but when Dunlap returned to the appellant's home the appellant was no longer there.

The following day, the officers obtained and executed a search warrant for the appellant's house. The officers were searching for drugs, drug paraphernalia, evidence of drug trafficking, and the twenty-dollar bills Dunlap had used to purchase the crack cocaine. Although the officers did not find any drugs in the appellant's house, they did find a "scanner" and rolling papers. The officers also seized approximately one thousand dollars ($1,000). Of that one thousand dollars ($1,000), nine hundred dollars ($900) was found in the pocket of a coat hanging in the appellant's bedroom. The five twenty-dollar bills with the recorded serial numbers were a part of the nine hundred dollars ($900) recovered from the coat. The appellant was indicted for the sale of .5 grams or more of a substance containing cocaine within one thousand feet (1,000') of an elementary school. Tenn. Code Ann. §§ 39-17-417(a)(3), (c)(1), -432(b) (Supp. 2002).

At trial, Lieutenant Kelly testified that he had known the appellant and Rhonda Swift for several years and he recognized both of their voices as he monitored the drug transaction. Lieutenant Kelly stated that after Dunlap "turned over two bags . . . that contained crack cocaine," the drugs were sealed in a plastic evidence bag and delivered to the Tennessee Bureau of Investigation (TBI) crime laboratory for analysis. At trial, the parties stipulated to the results of the analysis which verified that the "rocks" were .7 grams of crack cocaine. Lieutenant Kelly further testified that the appellant's house was located two blocks southeast of Central Elementary School, and although the officers were unable to measure the distance directly, they used the Pythagorean Theorem to determine that the school was 990 feet from the appellant's front porch. The State also presented the testimony of Paul Buckner, a licensed land surveyor with Buckner Engineering and Surveying Company, who used the "random-point traverse method" to determine that the appellant's house was approximately 990.9 feet from the school property.

Dunlap testified that he had known the appellant for eight to twelve months before the date of the offense and had visited the appellant's house on "more than ten" occasions during that period. Dunlap testified that when he entered the appellant's house on the day of the offense, he gave the appellant the money provided by the officers and the appellant handed him a baggy containing "two rocks" of crack cocaine. On cross-examination, Dunlap could not recall whether he had called the appellant by name during the drug transaction. Dunlap conceded that he had

purchased drugs at other houses in the appellant's neighborhood and that it was possible other individuals sold drugs from the appellant's house. Dunlap also admitted that he had a cocaine habit and that he had attempted to purchase crack cocaine at the appellant's house on May 17, 2001, even though the appellant was in jail at that time.

Rhonda Swift testified that she was at the appellant's house when Dunlap arrived. Swift stated that she observed Dunlap give money to the appellant and the appellant give Dunlap "something" in return, but that she "didn't see any crack." Swift acknowledged that her statement to Officer Jackson on May 15, 2001, provided that Swift observed the appellant pull "a bag of rocks . . . out of [the appellant's] waistband." However, Swift explained that Officer Jackson prepared the statement and threatened to charge Swift as an accessory if she did not sign it. Swift also conceded that she asked Dunlap for a "hit" before he left the appellant's house.

At trial, Justina Coleman testified on behalf of the defense. Coleman stated she was present at the appellant's house on September 14, 2000, around 2:30 p.m. and returned after dark to attend a birthday party for Tonya Parchman, the appellant's sister. Coleman testified that although she did not know Dunlap, the only "white man" who visited the appellant's house on the day of the party came while the appellant was out. Coleman stated that she did not see Swift that day.

The appellant testified that on the day of the alleged offense she was hosting a birthday party for her sister. The appellant noted that around 2:30 p.m. that afternoon, Michael White drove her to Wal-Mart in Union City to pick up her sister's birthday cake and to Fulton, Kentucky to purchase liquor for the party. According to the appellant, she did not return home until after 6:00 p.m., at which time she borrowed her sister's car to drive to a store in Martin, Tennessee where she purchased compact discs. The appellant testified that she did not see Dunlap that day, but that he had been to her house on prior occasions. The appellant denied selling drugs to Dunlap.

Based upon the foregoing evidence, the appellant was convicted of the sale of .5 grams or more of crack cocaine. However, the jury did not find that the sale occurred within 1,000 feet of Central Elementary School. As a result of her conviction, the trial court sentenced the appellant as a Range II multiple offender to twelve years incarceration. On appeal, the appellant argues that the evidence was insufficient to support her conviction and that her trial counsel was ineffective.

## II. Analysis

A. Sufficiency of the Evidence

The appellant first challenges the sufficiency of the evidence to sustain her conviction. The appellant argues that "if the jury believed that the [appellant] did sell crack cocaine to Mr. Dunlap, it should have convicted her of casual exchange, a lesser offense." When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P.

13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence was insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In order to sustain the appellant's conviction, the State had to prove that the appellant knowingly sold .5 grams or more of a substance containing cocaine to Dunlap. Tenn. Code Ann. § 39-17-417(a)(3), (c)(1). The appellant contends that the State did not carry its burden because "there were no drugs found in the [appellant's] house upon the execution of a search warrant the day after the alleged transaction." Regardless, we conclude that the State produced ample evidence of the appellant's guilt. Both Dunlap and Lieutenant Kelly testified that, after being searched to ensure that he had no money or drugs of his own, Dunlap entered the appellant's house with five twenty-dollar bills and exited with two "rocks" of a substance later determined by the TBI crime laboratory to be .7 grams of crack cocaine. Swift testified that she observed the appellant hand Dunlap "something" in return for money. Lieutenant Kelly recognized the appellant's voice as he monitored the drug transaction. Lieutenant Kelly also noted that when the officers executed the search warrant, they discovered drug paraphernalia and a large amount of money in the appellant's house. Finally, Lieutenant Kelly testified that the five twenty-dollar bills that had been provided to Dunlap to purchase the crack cocaine were part of the money recovered from a coat hanging in the appellant's bedroom. We conclude that this evidence was more than sufficient for a reasonable trier of fact to conclude beyond a reasonable doubt that the appellant was guilty of the sale of .5 grams or more of cocaine.

The appellant also argues that the evidence was insufficient because "the only eyewitness to the transaction was a crack cocaine user who had a motive to make a buy in order to avoid prosecution of a DUI." However, this argument goes to the weight of Dunlap's testimony rather than the sufficiency of the State's evidence. As previously noted, questions concerning the credibility of the witnesses and the weight to be afforded their testimony are to be resolved by the trier of fact. Bland, 958 S.W.2d at 659. This court will not reweigh or reevaluate this testimony. Id. This issue is without merit.

B. Ineffective Assistance of Counsel

The appellant also argues on appeal that she received ineffective assistance of counsel at trial. Although ineffective assistance of counsel claims may be raised on direct appeal, this court has previously cautioned that this is a practice "'fraught with peril' since it 'is virtually impossible to demonstrate prejudice as required' without an evidentiary hearing." State v. Ricky Brandon, No. M2002-00073-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 864, at *4 (Nashville, Oct. 15, 2002) (quoting State v. Blackmon, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001)). Moreover, once the

merits of an ineffective assistance of counsel claim have been addressed on direct appeal, the issue may not be revisited in a post-conviction proceeding. See Bobby Allen Joyner v. State, No. 03C01-9807-CR-00260, 1999 Tenn. Crim. App. LEXIS 498, at **4-5 (Knoxville, May 19, 1999). Thus, the better practice is to reserve the issue for a post-conviction proceeding in the event the direct appeal is unsuccessful. Brandon, 2002 Tenn. Crim. App. LEXIS 864, at *4.

On direct appeal, as in a post-conviction proceeding, the appellant is required to prove the ineffectiveness of counsel by clear and convincing evidence. State v. Burns, 6 S.W.3d 453, 461 n.5 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). A claim of ineffective assistance of counsel presents a mixed question of law and fact subject to de novo review. Burns, 6 S.W.3d at 461. As such, the trial court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, a trial court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Id.

When challenging the effectiveness of counsel, the appellant "bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

> Because [the appellant] must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if [the appellant] makes an insufficient showing of one component.

Id. at 370.

To establish constitutionally deficient performance, the appellant must demonstrate that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064; Burns, 6 S.W.3d at 462. Specifically, the appellant must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Dean v. State, 59 S.W.3d 663, 667 (Tenn. 2001).

The appellant contends that her trial counsel was ineffective for failing to question the appellant on direct examination regarding the money discovered in her bedroom. We note that there appear to be two separate arguments presented in support of this claim. In the appellant's motion for new trial and in the appellate brief, both trial and appellate counsel asserted that trial

counsel was ineffective for failing to ask the appellant where she obtained the nine hundred dollars ($900) found in her bedroom.[1] Counsel argued that the appellant's possession of the large sum of money led to the appellant's conviction and, had the jury been presented with evidence that the appellant's grandfather had given her the money, "the result of the trial would likely have been different." However, at the hearing on the motion for new trial, the appellant testified that the fact that her grandfather gave her the money "wasn't the point." The appellant argued that her trial counsel was ineffective for failing to provide her with an opportunity to dispute Lieutenant Kelly's testimony that on the day of the search, he sat down at the appellant's table and pulled out the five twenty-dollar bills used to purchase the drugs. The appellant testified, "[Lieutenant Kelly] claimed that he sat down and spread out the money and pulled out these marked bills. That was not true." Regardless, we cannot conclude that trial counsel's performance prejudiced the defense. As noted by the trial court at the hearing on the motion for new trial, the evidence of guilt in this case was "overwhelming." Even if Lieutenant Kelly's testimony had been impeached or the appellant had testified that her grandfather had given her the money, the remaining evidence was sufficient to sustain the appellant's conviction. This issue is without merit.

### III. Conclusion
Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

---

[1] The appellant's trial counsel raised this argument in the motion for new trial and appellate counsel raised it in the brief on appeal.