**STATE of Tennessee, Appellee,**

v.

**Jeffrey Lee LATHAM, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 22, 1995.

Mark E. Stephens, District Public Defender, R. Scott Carpenter, Asst. Public Defender, Steven C. Garrett, Asst. Public Defender, Knoxville, for Appellant.

Charles W. Burson, Attorney General & Reporter, Jennifer L. Smith, Asst. Attorney General, Nashville, Randall E. Nichols, District Attorney General, Robert L. Jolley, Asst. District Attorney General, Tony Stansberry, Asst. District Attorney General, William Crabtree, Asst. District Attorney General, Knoxville, for Appellee.

## OPINION

HAYES, Judge.

The appellant, Jeffrey Lee Latham, appeals from a conviction for solicitation to commit first degree murder entered in the Criminal Court for Knox County. The appellant presents one issue for our review. The appellant contends that the trial court erred in failing to instruct the jury that entrapment is a defense to the crime of solicitation to commit first degree murder.

After reviewing the record, we reverse the trial court's decision and remand for a new trial.

### I. Factual Background

On November 12, 1991, the Knox County Grand Jury indicted the appellant for solicitation to commit first-degree murder. The appellant filed notice of his intent to rely on the defense of entrapment. The trial court, however, refused to instruct the jury on the entrapment defense. This trial ended in a mistrial because the jury was unable to reach a unanimous verdict.

After the case was set for retrial, the appellant again gave notice of his intent to rely upon the defense of entrapment. During a pre-trial motion, the trial court denied the appellant's motion to instruct the jury on entrapment based upon its ruling that entrapment is not a defense to the crime of solicitation.

At the second trial, the proof revealed that the defendant solicited Bernard Waggoner, a federal agent with the Bureau of Alcohol, Tobacco, and Firearms, to kill Frank Cooper, his estranged wife's lover. During the defense's case-in-chief, the appellant recounted the events which led to his meeting with the federal agent. The appellant testified that Cooper began having an affair with his wife several months prior to the appellant's arrest for this offense in July, 1991. After discovery of the affair, the appellant began having mental health problems which resulted in a one week stay in Lakeside Mental Health Institute. Upon his release from Lakeside, the appellant discovered that his wife and children had moved into Cooper's trailer. The appellant found his own trailer padlocked and his furniture sold. The appellant testified that Cooper made threats to kill him. As a result of those threats, and upon being ousted from the parties' trailer, the appellant moved into the home of his parents.

The appellant testified that he never actually intended for Agent Waggoner to kill Frank Cooper.[1] Instead, the appellant claimed that he had been induced into approaching Waggoner by an acquaintance, Kenny Fann. Unknown to the appellant at that time, Fann was working as a govern-

---

1. The appellant's testimony on cross examination was rambling and contradictory. The appellant testified at various times that he had not intend-ed for the agent to kill Cooper as (1) "Kenny Fann coerced me into it"; (2) "it was just a joke"; (3) "I had told the agent "case closed"

ment informant.[2] According to the appellant, Fann initially contacted him and stated that he had heard about his problems with Frank Cooper. Fann then suggested that he "do something" about Cooper. The appellant testified that, at first, he rejected Fann's proposal, but Fann became insistent. Several days later, Fann allegedly told the appellant that he had already contacted the "hit man," and that because this person knew where they lived, the appellant and Fann would be in grave danger if the appellant failed to contact him about killing Cooper. The appellant testified that he only met with Agent Waggoner because of these threats.

Susan Latham, the appellant's mother, gave testimony corroborating the appellant's version of events. She stated that Kenny Fann called the appellant on several occasions. At first, the appellant rejected Fann's attempts to arrange a meeting with Agent Waggoner. She further testified that her son only agreed after Fann's persistent prodding led him to believe that Frank Cooper had been mistreating the appellant's children.

Agent Waggoner testified that, posing as a professional "hit man," he was introduced to the appellant by Kenny Fann on July 17, 1991. On that date, Waggoner and the appellant discussed the murder for hire of Frank Cooper. The appellant agreed to pay Waggoner a total of $500 to kill Frank Cooper. The appellant was to pay an initial installment of $250 to Waggoner at a local supermarket the next day. On the following day, the appellant arrived at the scheduled location, and, upon payment of the $250, was arrested and charged with solicitation to commit murder. To corroborate Agent Waggoner's testimony, the State played a tape recording of the conversation that took place

between Waggoner and the appellant on July 17, 1991. Relevant portions of the tape recording include:

MR. WAGGONER: "He said that you needed something?"

MR. LATHAM: "Yeah, I want a guy killed."

MR. WAGGONER: "Why?"

MR. LATHAM: "Fucking around with my wife; threatening to kill me over my wife. He won't even let me see my kids; padlocked my home." ...

MR. WAGGONER: "What do you want done about it?"

MR. LATHAM: "I don't want to hear him dead; I want to see him dead."

MR. WAGGONER: "Do you want to be there? Do you want something to do it with or do you want me to do it?"

MR. LATHAM: "I'd rather have somebody do it. I wanted to see what you charge—what they charge first."

MR. WAGGONER: "Who is it?"

MR. LATHAM: "Frank Cooper ..."

In rebuttal, the State called Fann, who testified that at no time had he made any threats against the appellant or forced him to do anything. Fann further testified that it was the appellant's idea to kill Cooper, not his.

Gregg Bowden, an agent with the Bureau of Alcohol, Tobacco, and Firearms, also testified for the State as a rebuttal witness. This witness testified that he heard the appellant state after his arrest: "I should have killed the son-of-a-bitch myself.... I knew better than to go this way. I should have done it myself. This wouldn't have happened."

which meant I don't want nobody killed"; (4) "I was under a lot of pressure and didn't know what I was saying"; and (5) "If I backed out Kenny said this guy would kill both of us."

**2.** The proof at trial revealed that the federal agent, while a Knoxville police officer, had arrested Fann on a charge of larceny. This offense ultimately resulted in Fann's conviction for larce-

ny. Fann continued contact with Waggoner after Waggoner's employment as an ATF agent. Fann worked as a government informer. The exact nature of the relationship and its duration was not developed, because the trial court found entrapment was not a valid defense. Thus, this area of inquiry was foreclosed by the court's ruling.

The jury found the appellant guilty of solicitation to commit first-degree murder. The trial court then sentenced the appellant to ten years as a Range I standard offender. The appellant now challenges the court's failure to give the requested entrapment instruction.

## II. The Applicability of the Entrapment Defense

■ Prior to 1980, Tennessee courts did not explicitly recognize entrapment as a defense, although its application was occasionally validated on an *ad hoc* basis. *See State v. Jones*, 598 S.W.2d 209, 216 (Tenn.1980). In 1980, the Tennessee Supreme Court expressly recognized entrapment as a valid defense against criminal liability. *Id.* The court defined entrapment as follows:

[A]s a general rule of criminal practice and procedure entrapment occurs when law enforcement officials, acting either directly or through an agent, induce or persuade an otherwise unwilling person to commit an unlawful act; however, where a person is predisposed to commit an offense, the fact that the law enforcement officials or their agents merely afford an opportunity does not constitute entrapment.

*Id.* at 220 (citations omitted). However, the court in *Jones* further held that entrapment is not a defense to the crime of solicitation: "[O]ne may not be solicited into soliciting. He is either the solicitor or the solicitee." *Id.* at 221. After *Jones*, the law of entrapment remained essentially unchanged until 1989.

In 1989, our state legislature enacted a new criminal code patterned in large part upon the Model Penal Code of the American Law Institute. The 1989 Criminal Code for the first time codified all defenses available to prosecution in Tennessee. The defense of entrapment was codified as a general defense. According to Tenn.Code Ann. § 39–11–505 (1991), entrapment occurs when "law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so." [3] The issue central to our review is whether the defense of entrapment under the current criminal code retains a solicitation exception.

The State contends that the criminal code, by implication, excludes entrapment as a defense to solicitation. According to the State, the fact that the code defines entrapment using nearly "identical" language to that used in *Jones* demonstrates the legislature's awareness of the *Jones* holding. Thus, the State asserts that the adoption of the 1989 Criminal Code did not supersede the portion of *Jones* excluding entrapment as a defense to solicitation. No Tennessee court has addressed this issue.[4]

■ After reviewing the relevant principles of law, we are unable to adopt the State's position. We are required to construe the provisions of the criminal code according to the fair import of their terms. *See* Tenn.Code Ann. § 39–11–104 (1991). Two important provisions in the 1989 Code are relevant to our review of the issue presented. First, Tenn.Code Ann. § 39–11–102(a) (1991) provides: "Conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, or rule authorized by and lawfully adopted under a statute." This section, in effect, provides that conduct does not constitute an

---

3. In contrast with Tennessee's entrapment defense, the Model Penal Code contains the following additional provision: "The defense afforded by this Section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment." Model Penal Code § 2.13(3) (1985).

4. The trial court relied in part upon *State v. Gann and Barrett*, No. 01–C–O1–9011–CR–00294, 1992 WL 75845 (Tenn.Crim.App. at Nashville, April 16, 1992), to support the proposition that entrapment is not a defense to solicitation. In *Gann and Barrett*, the crime at issue was committed prior to the effective date of the passage of the 1989 Criminal Code. Thus, we conclude that this case has no application to the issue before us.

offense unless it is a crime or violation under the code. The import of this provision is that all common law offenses heretofore existing are abolished.[5] The language of the code is intended to be an authoritative statement of the law. *See* Sentencing Commission comments, Tenn.Code Ann. § 39–11–104 (1991). The offense of solicitation is defined under the provisions of Tenn.Code Ann. § 39–12–102 (1991). Although numerous defenses to the offense of solicitation are expressly disallowed under this section, the defense of entrapment is not so exempted.

Second, Section Tenn.Code Ann. § 39–11–203(e)(2) (1991) provides that "defenses under common law are hereby abolished."[6] This language is unambiguous.

We conclude that by abolishing common law defenses, the 1989 Criminal Code superseded the definition of entrapment as announced in *Jones*, including the solicitation exception. The common law definition of entrapment under *Jones* has, therefore, been effectively replaced by Tenn.Code Ann. § 39–11–505, which does not include a solicitation exception.

### III. Application to the present case

■ Since we have concluded that the defense of entrapment applies to the crime of solicitation, we must determine whether there was sufficient evidence of entrapment in this case to warrant an instruction on the defense. In Tennessee, a defense is not submitted to the jury unless it is fairly raised by the evidence. Tenn.Code Ann. § 39–11–203(c) (1991). Therefore, our task is to review the evidence in this case to determine whether the elements of entrapment are fairly raised therein.

There are two recognized tests for entrapment. The most commonly accepted test is the "subjective test." The "subjective test" requires the jury to focus on the subjective intent of the defendant and determine if the defendant was intent on performing the criminal act, with the police only furnishing an opportunity to do so, or whether the defendant was an innocent person lured into committing the crime. 21 AM.JUR.2D *Criminal Law* § 205 (1976). Under the less commonly applied "objective test," the focus is on the nature of the police activity involved, without reference to the predisposition of the defendant. Id. at § 206.

■ In enacting Tenn.Code Ann. § 39–11–505, our legislature adopted the "subjective test." Under this provision, the defense of entrapment is available when the following elements are established: (1) law enforcement officials, acting either directly or through an agent, induced or persuaded a person to commit an unlawful act, and (2) such person was otherwise unwilling or had no predisposition to commit the unlawful act.

Upon our determination that the Criminal Code recognizes entrapment as a defense to the crime of solicitation, we conclude that the trial court erred in failing to grant the appellant's requested jury instruction. Here, although sparse, there is proof which tends to establish that the appellant was induced into committing a crime that he was not predisposed to commit. Both the appellant and his mother testified that Fann prodded the appellant into contacting Agent Waggoner, even though the appellant voiced reservations. Without passing on the truth of the allegations of inducement, predisposition or whether Fann was acting as a government agent or as a private citizen, we hold that the record before us contains sufficient evidence for the question to be put before the jury. For these reasons, we reverse the judgment

---

**5.** The Sentencing Commission Comments to Tenn.Code Ann. § 39–11–102 state: "It is the intent of the commission that common law offenses be replaced with statutory offenses to effectuate the goals set forth in Tenn.Code Ann. § 39–11–101(1) and (2)."

**6.** "The common law ... includes those principles, usages and rules of action applicable to the government and security of persons and property which do not rest for their authority upon any express or positive statute or written declaration, but upon statements of principles found in the decisions of the courts." 15A AM.JUR.2D *Common Law* § 1 (1976); *see also Shepherd Fleets, Inc. v. Opryland USA*, 759 S.W.2d 914, 916 (Tenn.App.), *perm. to appeal denied*, (Tenn.1988).

of the trial court and remand for a new trial with instructions to charge the jury on the entrapment defense should proof of entrapment be fairly raised at trial.

WADE and PEAY, JJ., concur.