IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
MAY SESSION, 1997

FILED

November 3, 1997

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,     )
                                    )
     Appellee          )     No. 01C01-9607-CC-00292
                                    )
vs.                       )     OVERTON COUNTY
                                    )
                                    )     Hon. LEON BURNS, JR., Judge
MICHAEL BUELL,     )
                                    )     (Voluntary Manslaughter)
     Appellant      )

For the Appellant:

**GREGORY D. SMITH**
Contract Appellate Defender
One Public Square, Ste. 321
Clarksville, TN 37040

**ART JOHNSON**
Asst. Public Defender
215 Reagan Street
Cookeville, TN 38501

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**GEORGIA BLYTHE FELNER**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**WILLIAM EDWARD GIBSON**
District Attorney General

**BEN FANN**
Asst. District Attorney General
145 South Jefferson Avenue
Cookeville, TN 38501

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Michael Buell, was convicted by a jury of voluntary manslaughter. The trial court imposed a sentence of four years to be served in the Department of Correction. On appeal, the appellant raises two issues for our review. First, he contends that the trial court failed to instruct the jury on accident, self-defense, and defense of a habitation. Second, the appellant contends that the trial court erred in failing to grant an alternate sentence.

After a review of the record, we affirm.

**I. Background**

At trial, the proof developed that the appellant, and the victim, Billy Hensley, lived approximately one quarter mile from each other in the Hilham community of Overton County. They had been friends for approximately two years. Additionally, both had minor daughters who were friends and who visited in each other's home. On the morning of May 15, 1994, Hensley went to the appellant's home to pick up his daughter and the appellant's two daughters in order that they might attend church. After church, the appellant's children visited at Hensley's home. Around 6:15 p.m., the appellant and his wife drove to Hensley's residence to collect their two daughters. Upon their arrival, their daughters, appearing upset, came running to their car. The appellant went into Hensley's house where he and the victim talked for about five minutes. After returning to his car, he then drove home. Within fifteen to twenty minutes after the appellant arrived home, the victim appeared. They spoke for approximately three or four minutes and Hensley left. Approximately ten minutes later, Hensley returned. Again, the appellant spoke with Hensley for about five minutes and,

2

again, Hensley left.[1]   Hensley returned yet again, this time insisting that the appellant accompany him to the Hensley residence to talk with Hensley's daughter.  At the Hensley residence, Hensley questioned his daughter as to whether their neighbor had attempted to "French kiss" her earlier that day.  His daughter refused to discuss the incident.  According to the appellant, Hensley became aggressive toward his eleven-year-old daughter, attempting to force her to "French kiss" him.[2]  The daughter became upset and began to cry.  In response to this behavior, the appellant threatened that if Hensley did not stop, he would report him to the Department of Human Services.  Disgusted, the appellant walked home, where he informed his wife and his two daughters that his daughters were never to visit at Hensley's home.

Twenty minutes later, around 8:30 p.m., Hensley again traveled to the appellant's home.  Not wanting to talk further with Hensley, who was intoxicated, the appellant sent his wife outside to ask Hensley to leave.  Hensley insisted upon talking to the appellant before he left and began cursing the appellant's wife.  While his wife and Hensley continued arguing, the appellant appeared from a side door of the house and fired one shot into the air from a .30 caliber lever action rifle.[3]  Hensley entered his vehicle.  The appellant then instructed his wife to back away, and within twenty seconds of his first shot, again fired the rifle.  The second shot entered Hensley's vehicle through the windshield, striking Hensley in the chest.  This wound was fatal.  When paramedics arrived at the scene, they discovered Hensley seated in his vehicle, slumped over the steering wheel.  A pistol was located under his right hip and a bottle of beer between his

---

[1]Although various testifying witnesses were present when the ongoing conversations between the appellant and Hensley occurred, the proof is totally void of any evidence which reflects the nature of the conversations or whether they were amicable or heated exchanges.

[2]At trial, Hensley's daughter denied that her father attempted to "French kiss" her.

[3]The record indicates that, at the time the first shot was fired, it was very dark outside.  The only light in the yard was coming from two open light bulbs on the front porch.  The appellant was not visible to either his wife or Hensley.

legs.[4]  In his statement to sheriff's deputies, the appellant stated, "He just kept on and on so I shot up in the air.  That's all I meant to do, just scare the man.  He wouldn't leave. . . . When I cocked it again I took it  -  I just shot, going back, I just shot straight up in the air and cocked it again and I just going to point it at him and scare him."

The appellant was indicted on one count of premeditated first degree murder.  At trial, the appellant denied that he meant to point the rifle at Hensley.  On direct examination, he testified that, after firing the first shot in the air, the victim had gotten back into his car.  ". . .  and he started to get back out.   And then when he done that, I levered the gun again and was going to bring it down to the ground and about right in there somewhere, the gun went off. . . . I didn't mean to shoot him . . . ; it just accidentally went off . . . ."  From the proof introduced at trial, the jury found the appellant guilty of voluntary manslaughter.

## II.  Jury Instructions

The appellant contends that the trial court erred by refusing to instruct the jury as to the defenses of self-defense, defense of habitation, and accident.  At trial, the appellant requested that the court charge the jury on these defenses.  The court denied the appellant's requests, finding that there was no proof offered to raise self-defense, defense of habitation, or accident as legitimate defenses in this case.

Every defendant has the right to have every issue of fact raised by the evidence and material to his or her defense submitted to the jury on proper instructions.  Tenn. Code Ann. § 39-11-203(c) (1991);Tenn. Code Ann. §39-11-

---

[4]The autopsy report indicated the appellant's blood alcohol level was .18 percent.

204(d) (1991); see also State v. Jones, 889 S.W.2d 225, 229 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1994). "[T]o determine whether a statutory defense is fairly raised by the proof so as to require its submission to the jury, a court must, in effect, consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence." State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993).

## A. Self-Defense

In order to establish a claim of self-defense, a defendant must show that the danger of death or serious bodily harm was imminent and impending, manifested by some words or overt acts at the time clearly indicative of a present purpose to do injury. Tenn. Code Ann. §39-11-611 (1991).[5] See also State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). The evidence in the present case does not raise an inference requiring an instruction on self-defense. There is no proof that the victim ever committed an assault against the appellant or that he intended to harm the appellant or any family member. The appellant testified that he was not afraid of the victim, in fact, he and the victim were friends. Although a pistol was found by the victim's body, it was not unusual for the victim to have a gun in his car, and there is no proof which even suggests that the weapon was ever displayed or used in a threatening manner against the appellant. Furthermore, the appellant explained that he fired the rifle in order to scare the victim into leaving his property. Thus, there was no error in the trial court's refusal to give such a charge. See, e.g., State v. Johnson, No. 03C01-9510-CR-00331 (Tenn. Crim. App. at Knoxville, Sept. 18, 1996).

## B. Defense of Home

---

[5]Our current criminal code treats "self-defense" as justification for conduct that otherwise would constitute an offense. Thus, the actor's conduct is "justified" or thought to be right. See MODEL PENAL CODE § 3.01.

The appellant contends that the trial court erred in failing to instruct the jury on the defense of habitation. The 1989 CRIMINAL CODE, which was in effect at the time of this offense, contains no provision which, *per se,* recognizes the "defense of a habitation."[6] Our current law, however, provides that

> "Any person using force intended or likely to cause death or serious bodily injury within their <u>own</u> <u>residence</u> is presumed to have held a reasonable fear of imminent peril or death or serious bodily injury to self, family or a member of the household when that force is used against another person, not a member of the family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence, and the person using the force knew or had reason to believe that an unlawful and forcible entry occurred." Tenn. Code Ann. § 39-11-611(b) (emphasis added).

Clearly, this provision which simply extends the defense of self-defense into the residence with the accompanying presumption is inapplicable because (1) no evidence of an intent to harm was established and (2) the alleged conduct occurred outside the appellant's residence.[7] This issue is without merit.

## C. Accident

At trial, the appellant maintained that his act of shooting Hensley was an accident. He contends that the shooting was unintentional and that he was only attempting to shoot into the ground to scare Hensley. He argues that "[a] legitimate issue of 'accident' was raised and an instruction should have been given for the jury to consider accidental killing versus voluntary manslaughter."

As previously stated, the 1989 CRIMINAL CODE codified all defenses available to prosecution. <u>See</u> *Supra* note 6. Unless a defense to prosecution is so labeled,

---

[6] In 1989, our legislature adopted a new criminal code, which, for the first time, codified all defenses available to prosecution. <u>State v. Latham</u>, 910 S.W.2d 892, 895 (Tenn. Crim. App. 1995). While it created statutory defenses, the new code expressly abolished all common law defenses. Tenn. Code Ann. § 39-11-203(e)(2)(1991); <u>see also</u> <u>Latham</u>, 910 S.W.2d at 896. Because of its omission in the criminal code, the "defense of habitation," *per se*, is no longer recognized as a criminal defense in Tennessee. Tenn. Code Ann. § 39-11-203.

[7] We note that our criminal code recognizes the defense of protection of property. <u>See</u> Tenn. Code Ann. § 38-2-102, § 39-11-614(a-c). When read in *pari materia*, these two statutes evince a clear legislative intent that deadly force is not permitted in the defense of property.

a defense by prescribed statutory language is not a defense. Tenn. Code Ann. §
39-11-203(a). Our criminal code does not recognize the defense of "accident."

This issue of "accident" is more properly addressed within our criminal
code's requirement of mental culpability necessary to establish criminal liability.
Accidental is defined as "occurring unexpectedly, unintentionally or by chance."
The AMERICAN HERITAGE DICTIONARY (3d ed. 1992). When an accused argues
that he is not criminally liable for an offense because it was an accident, he is, in
effect, asserting that he lacked the culpable mental state required for conviction.
Tenn. Code Ann. § 39-11-301(b) (1991). No person may be convicted of an
offense unless the culpable mental state is proven beyond a reasonable doubt.
Tenn. Code Ann. § 39-11-201(a)(2)(1991). Thus, the appellant was free to
argue to the jury that the shooting was an accident, i.e. not intentional, and that,
because the homicide charged required proof that the killing be committed
knowingly or intentionally, he was not guilty. This court, in State v. Phipps, 883
S.W.2d 138, 142 (Tenn. Crim. App. 1994), held:

> When the trial judge gives instructions that correctly, fully, and fairly
> set forth the applicable law, it is not error to refuse to give a special
> requested instruction. We must review the entire charge and only
> invalidate it if, when read as a whole, it fails to fairly submit the
> legal issues or misleads the jury as to the applicable law.

In the present case, the court fully and accurately instructed the jury on the
elements of first degree murder and on the lesser offenses of second degree
murder, voluntary manslaughter, reckless homicide, and criminally negligent
homicide. These instructions were sufficient to embrace the appellant's
argument that the homicide was an accident. If the jury had determined that the
appellant's conduct resulted from an accident, then the elements of the crimes
with which the appellant was charged would not have been met, and the jury
would have returned a verdict of "not guilty." See State v. Jordan, No. 01C01-
9311-CC-00419 (Tenn. Crim. App. at Nashville, June 13, 1995), perm. to appeal
denied, concurring in results only, (Tenn. Feb. 5, 1996). This issue is without

merit.

### III.  Denial of Alternative Sentence

The appellant also avers that the trial court erred by refusing to consider an alternative sentencing option.  When a defendant challenges the manner of his sentence, this court must conduct a *de novo* review with the presumption that the determination made by the trial court is correct.  Tenn. Code Ann. § 40-35-401(d)(1990).  This presumption only applies, however, if the record shows that the trial court properly considered relevant sentencing principles.  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  Moreover, the burden is upon the defendant to show that the sentence imposed is improper.  Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401.

In the present case, the trial court denied alternative sentencing based upon the seriousness of the offense. See  Tenn. Code Ann. § 40-35-103 (1990); Tenn. Code Ann. § 40-35-102(6) (1994 Supp.).  See also  State v. Bonestel, 871 S.W.2d 163, 167 (Tenn. Crim. App. 1993).  In so ruling, the trial court remarked:

> Again, when we go to the extent of taking a weapon, firing at someone, using it in such a way as to cause likelihood of somebody being killed and say, well, it went off. . . . So people who are going to do that must pay the consequences it seems to me, and because of the seriousness of this offense, the life that has been taken and the nature of it, that I think it would be a proper sentence to impose Department of Corrections time to be served on a four year sentence.

A trial court's denial of an alternative sentence based upon the "seriousness of the offense" will be upheld if there is evidence in the record that indicates that the circumstances of the offense, as committed, were especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense outweighs all factors favoring

8

a sentence other than confinement. State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995) (citations omitted). The record in this case demonstrates a basis for concluding that the nature of the offense as committed is especially reprehensible and offensive. The trial court considered both the nature and circumstances surrounding this offense and the length of the sentence, four years, in denying an alternative sentence. Consideration of leniency in both the verdict and the length of the sentence are proper considerations for finding confinement necessary under Tenn. Code Ann. § 40-35-103(1)(B). See State v. Bush, No. 01C01-9605-CC-00220 (Tenn. Crim. App. at Nashville, June 26, 1997); State v. Black, No. 03C01-9404-CR-00139 (Tenn. Crim. App. at Knoxville, Apr. 6, 1995); State v. Perry, No. 89-133-III (Tenn. Crim. App. at Nashville, Aug. 29, 1990) (Dwyer, J., concurring and dissenting).

The presumption of suitability for alternative sentencing has been overcome by proof to the contrary. Moreover, the appellant has failed to demonstrate that the trial court's ruling denying an alternative sentence was improper. Again, the trial court's ruling that confinement is necessary to avoid depreciating the seriousness of the offense is supported by the record. Accordingly, the trial court's denial of an alternative sentence is affirmed.

Based upon the foregoing reasons, the judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

9

CONCUR:


_____
PAUL G. SUMMERS, Judge


_____
JERRY L. SMITH, Judge