IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 18, 2018

**ARTHUR LEE JAMISON, JR., v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2010-A-473      Cheryl A. Blackburn, Judge**

_____

**No. M2017-01551-CCA-R3-PC**

_____

A jury convicted the Petitioner, Arthur Lee Jamison, Jr., of the sale of less than 0.5 grams of a substance containing cocaine within a drug-free school zone. The Petitioner sought post-conviction relief, asserting that he received the ineffective assistance of his trial counsel when trial counsel failed to communicate with him, failed to file pretrial motions, including a notice of his intent to use the entrapment defense, failed to investigate and summon witnesses, and gave deficient advice regarding testifying at trial. Because the Petitioner has failed to establish either deficiency or prejudice for each claim, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Kara L. Everett (on appeal) and Elaine Heard (at hearing), Nashville, Tennessee, for the appellant, Arthur Lee Jamison, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Glenn Funk, District Attorney General; and Pam Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Petitioner's conviction was the result of an undercover operation during which a law enforcement officer approached the Petitioner and requested ten dollars'

worth of cocaine. Testimony at trial supported the inference that the Petitioner initially attempted to take the money without delivering the drugs, but the Petitioner ultimately gave law enforcement a small amount of crack cocaine in exchange for the ten dollars. The Petitioner asserts that his conviction is the result of his trial counsel's deficient representation.

## Trial

The Petitioner, who suffers from bipolar disorder, was represented by numerous attorneys at trial and during the post-conviction proceedings. He was evaluated and found competent prior to trial. The Petitioner's first attorney was permitted to withdraw, and trial counsel was appointed to represent him. At trial, the State presented evidence that an undercover officer, Officer Josh Walters of the Metropolitan Nashville Police Department, drove up to the Petitioner while the Petitioner was standing on a street corner and asked the Petitioner for ten dollars' worth of cocaine. Officer Walters was being monitored by other law enforcement agents visually and through a listening device. The Petitioner agreed to procure the cocaine and entered Officer Walters's car.

The Petitioner directed the car to a gas station and asked Officer Walters to give him the ten dollars so that he could exchange it at the gas station. Officer Walters indicated that the serial number of the ten-dollar bill had previously been recorded. Officer Walters acknowledged, however, that he felt there was a "good possibility" that the Petitioner intended to abscond with the ten dollars rather than exchanging the money for an unmarked bill. Detective Jacob Pilarski, who was listening to Officer Walters's conversation with the Petitioner, testified that Officer Walters did not want to give the Petitioner the money at the gas station because "a lot of times" suspects would "just walk off with the money."

Having failed to obtain the money, the Petitioner directed Officer Walters to drive to a location within sight of a school building. There, he placed a telephone call asking for "a dime," which Officer Walters testified was ten dollars' worth of cocaine. Detective Pilarski testified that, at this point, police pulled closer to Officer Walters's vehicle because "it seemed like [the Petitioner] was just trying to get the money and run."

The Petitioner then directed Officer Walters to a residence within one thousand feet of another school. Officer Walters agreed to let the Petitioner take his ten dollar bill if the Petitioner would leave his telephone as collateral. The Petitioner entered the home with the money. Detective Pilarski testified that his car was parked behind the residence and that while he was behind the building, he saw a person peek out of the back door. He also saw another individual walk into the residence and then walk away.

- 2 -

When the Petitioner returned to the car, he told Officer Walters that he could not get the drugs because he "saw the vice out." The Petitioner handed Officer Walters a crumpled bill. Officer Walters, discovering that the crumpled bill was a one-dollar rather than a ten-dollar bill, accused the Petitioner of "trying to rip [him] off." Detective Pilarski testified that he overheard Officer Walters say, "[T]hat's not ten[;] that's a one." On cross-examination, Detective Pilarski recalled Officer Walters saying, "[W]here's my ten?" He elaborated that Officer Walters and the Petitioner then "talked about that." Detective Pilarski testified that the Petitioner finally said, "I've got the dope, just drive." Officer Walters likewise testified that the Petitioner eventually told Office Walters, "I got it, I got it, just go." The Petitioner then directed Officer Walters to a location within one thousand feet of a school, where he gave Officer Walters a small piece of paper with 0.03 grams of crack cocaine in it.

The State presented witnesses confirming that the location of the transaction was within one thousand feet of a school, establishing the chain of custody of the drugs, and confirming that forensic testing revealed that the substance the Petitioner gave Officer Walters contained cocaine.

The Petitioner did not testify at trial, and he was convicted of selling less than 0.5 grams of a substance containing cocaine within one thousand feet of a school. *State v. Arthur Lee Jamison, Jr.*, No. M2012-00184-CCA-R3-CD, 2013 WL 451874, at *3 (Tenn. Crim. App. Feb. 6, 2013), *perm. app. denied* (Tenn. June 12, 2013). He was sentenced to ten years' incarceration, with eight years to be served at one hundred percent. *Id.* The Petitioner was represented by new counsel on appeal, and this court rejected a challenge to the sufficiency of the evidence and affirmed the conviction. *Id.* at *1.

## Post-Conviction

The Petitioner filed a petition for post-conviction relief, raising various grounds, including ineffective assistance of counsel. The post-conviction court appointed counsel but permitted counsel to withdraw at the Petitioner's request and appointed a new attorney to represent the Petitioner. At the post-conviction hearing, the Petitioner again requested new post-conviction counsel, asserting that post-conviction counsel had failed to obtain discovery or subpoena witnesses, including appellate counsel. The post-conviction court noted that the Petitioner's first attorney also was relieved because of "an inability to get along," and it denied the request for new post-conviction counsel.

The Petitioner testified that he met with trial counsel only twice: when trial counsel was first appointed and the day before trial. The Petitioner stated that trial counsel told him "to prepare for trial" the next day but that the meeting lasted only ten minutes. The Petitioner testified that he had attempted to contact trial counsel numerous

times by telephone and mail but that trial counsel never responded. The Petitioner averred that trial counsel did not review discovery with him but that he did receive discovery from his previous attorney. The Petitioner filed a complaint against trial counsel with the Board of Professional Responsibility, and he testified that trial counsel responded to the complaint by stating that no pretrial motions had been filed because the Petitioner "had no case." The Petitioner's testimony is unclear regarding whether this phrase was meant to convey that the Petitioner had no reasonable defense or that the prosecution's case against the Petitioner was so weak that the Petitioner "should just win."

The Petitioner alleged that trial counsel failed to investigate his case. In particular, he asked trial counsel to investigate the address at which the crime occurred because he and his family had discovered that there was no "white house"[1] at the address provided. Trial counsel did not obtain photographs of the drugs. Trial counsel also did not obtain a transcript of the preliminary hearing, despite the Petitioner's requests. Trial counsel informed the Petitioner that the transcript would not be helpful because the Petitioner "had no case."

The Petitioner also complained of trial counsel's failure to call witnesses at trial. The Petitioner had asked trial counsel to subpoena "the guy that ran the Matthew 25 house on Vine Hill," a woman named Alice from the same establishment, a counselor at a rehabilitation facility, and a witness named Rick whose last name might have been Moore. The Petitioner stated that trial counsel refused to issue the subpoenas and repeated that the Petitioner did not "have a case." The Petitioner acknowledged that none of these witnesses were involved in the events that led to his arrest. However, he clarified that he had telephoned these witnesses prior to being approached by Officer Walters and that they would have testified that the Petitioner had told them he was on the street corner waiting for a bus, supporting his contention that he was not standing on the street with the intent to engage in a drug transaction.

The Petitioner stated that he discovered at trial that the State had failed to provide him discovery, including access to his confiscated telephone and photographs of the drugs he allegedly sold. He also asserted that the State withheld the preliminary hearing transcript and laboratory reports from the Tennessee Bureau of Investigation ("TBI").

The Petitioner testified that trial counsel failed to file pretrial motions. The Petitioner recalled that during trial, trial counsel attempted to raise an entrapment defense

---

[1] One of the exhibits at trial was a map which included a computer-generated icon in the shape of a white house with call-out text to indicate the address of the residence the Petitioner entered with the ten dollars.

and was not aware that he was required to file a pretrial notice of his intent to do so. Trial counsel also failed to file a motion to suppress evidence and a "motion for a[n] evidentiary hearing." The Petitioner elaborated that trial counsel should have suppressed evidence related to his telephone, which was seized in violation of the prohibition on unreasonable searches and seizures, and the drugs he allegedly sold. He clarified that he wanted an evidentiary hearing to establish a chain of custody for the drugs.

Trial counsel testified that his practice was mainly criminal work with some corporate experience. He had served as an assistant district attorney general prior to practicing criminal defense, and he had experience with defending serious felonies. Trial counsel testified that prior counsel had provided the Petitioner with discovery and that trial counsel met "numerous" times with the Petitioner after his appointment. Trial counsel noted that the Petitioner's communications to him acknowledged that they had spoken numerous times. Prior to trial, the Petitioner was released on bond and "disappeared," providing no information regarding how he could be reached. Trial counsel testified that he contacted court officials, the Petitioner's family, and the Petitioner's rehabilitation facility but was unable to locate him. Trial counsel ultimately located the Petitioner through the Petitioner's bondsman.

Trial counsel testified he filed a pretrial motion to limit impeachment evidence regarding the Petitioner's prior criminal history. The Petitioner had told trial counsel that the Petitioner was not planning to sell drugs to Officer Walters but "intended to rob the individuals." According to trial counsel, the entrapment defense would not have been successful because the Petitioner's intent to take the ten dollars meant that he was not engaged in lawful behavior. Trial counsel also agreed that pursuit of an entrapment defense would have opened the door to allowing evidence of the Petitioner's prior drug-related convictions.

Trial counsel saw no grounds to file a motion to suppress. He elaborated that there was nothing to suppress from a search of the home because the home was never searched. He noted that while the telephone itself was introduced as physical evidence, no information recovered from the telephone was introduced.

Trial counsel stated that he and the Petitioner discussed the merits of testifying "[a]lmost at every point." Trial counsel advised the Petitioner against testifying because the Petitioner was very talkative and would not answer questions directly. Trial counsel also stated that the Petitioner had told him that he intended to abscond with Officer Walters's money. Because the Petitioner "had the specific intent to commit not one crime on that day but two," and because he felt the Petitioner's prior record and admission that he intended to steal Officer Walters's money would have predisposed the jury to convict him, he advised the Petitioner not to testify.

Trial counsel indicated that he received discovery and was aware that the drugs, telephone, and TBI lab report were available in the property room. He testified that he provided the lab report to the Petitioner and that he reviewed discovery with the Petitioner.

The post-conviction court denied relief. Crediting the testimony of trial counsel, the post-conviction court found that trial counsel communicated adequately with the Petitioner. Regarding pretrial motions, the post-conviction court found that trial counsel made a reasonable strategic decision not to assert an entrapment defense and that the Petitioner had not established a reasonable probability that either a motion to suppress or notice of intent to assert an entrapment defense would have changed the outcome of the trial. The court also noted that trial counsel had filed a motion to exclude the Petitioner's prior convictions as impeachment and that the Petitioner's testimony supporting entrapment would have resulted in the admission of his prior drug-related convictions. Because the witnesses that trial counsel allegedly failed to investigate and call were not present at the post-conviction hearing, the post-conviction court concluded that the Petitioner could not establish prejudice. The post-conviction court credited trial counsel's testimony that he had advised the Petitioner regarding his decision not to testify. Concluding that the Petitioner had not demonstrated that he received ineffective assistance of counsel, the post-conviction court denied relief.

## ANALYSIS

On appeal, the Petitioner asserts that he received ineffective assistance of counsel when trial counsel failed to communicate with him, failed to file pretrial motions, failed to investigate or present witnesses, and failed to advise the Petitioner regarding his decision to testify at trial.

We note here the inadequacy of the appellate brief filed on behalf of the Petitioner, which fails to specify what counsel's alleged omissions or errors were, despite the fact that the post-conviction petition, the Petitioner's post-conviction testimony, and the post-conviction court's detailed order articulated the factual allegations underlying the arguments for deficiency. The only sentence in the argument section of the brief filed by post-conviction counsel which relates to the Petitioner's claims is couched in terms of the broadest generality, asserting only that trial counsel failed "to properly present a cohesive defense for Appellant at trial by failing [to] effectively communicate with client; by failing to file the appropriate pretrial motions; by failing to investigate the case and prepare witnesses; and by failing to ma[k]e advisements to Appellant regarding testimony on his own behalf." The State, noting that the vagueness of the brief supports a finding

- 6 -

of waiver, nevertheless addresses the issues raised at the hearing and ruled on by the post-conviction court, and we endeavor to do the same.

The Post-Conviction Procedure Act provides for relief when a petitioner's conviction or sentence is void or voidable due to the abridgment of a right guaranteed by the United States Constitution or by the Tennessee Constitution. T.C.A. § 40-30-103. A claim that the Petitioner was denied effective assistance of counsel constitutes a mixed question of law and fact. *Moore v. State*, 485 S.W.3d 411, 419 (Tenn. 2016). An appellate court reviews de novo with no presumption of correctness the post-conviction court's conclusions of law, its determinations of mixed questions of law and fact, and its application of law to factual findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). The post-conviction court's factual findings are conclusive on appeal unless the record preponderates otherwise. *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). An appellate court does not reweigh or reevaluate the evidence or substitute its own inferences for those of the fact-finder. *Kendrick*, 454 S.W.3d at 457. On appeal, we defer to the post-conviction court's findings regarding witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence. *Id.* The petitioner bears the burden of demonstrating the allegations of fact entitling him to relief by clear and convincing evidence. T.C.A. § 40-30-110(f).

A person accused of a crime is entitled to the assistance of counsel in criminal proceedings under the Sixth Amendment to the United States Constitution and under article I, section 9 of the Tennessee Constitution. These provisions guarantee the reasonably effective assistance of counsel. *Nesbit*, 452 S.W.3d at 786. The deprivation of this right is a cognizable claim under the Post-Conviction Procedure Act. *Moore*, 485 S.W.3d at 418. To prevail on a claim, the petitioner must show that trial counsel's representation "'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

In order to demonstrate that he received ineffective assistance of counsel, a petitioner must show both that trial counsel performed deficiently and that the deficient performance prejudiced the defense. *Nesbit*, 452 S.W.3d at 786 (citing *Strickland*, 466 U.S. at 687). Failure to prove either deficiency or prejudice precludes relief, and the court need not address both components if the petitioner has failed to make a showing on one. *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011).

To show deficient performance, a petitioner must demonstrate that "'counsel's representation fell below an objective standard of reasonableness' guided by 'professional norms' prevailing at the time of trial." *Felts*, 354 S.W.3d at 276 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 688). In other words, the petitioner must

demonstrate that counsel's errors were "'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). Counsel's performance is not measured by "'20-20 hindsight.'" *Id.* at 277 (quoting *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). Instead, the court applies a strong presumption that counsel's performance was within the bounds of reasonable professional assistance. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 690-91).

To show prejudice, a petitioner must establish that there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Felts*, 354 S.W.3d at 277 (quoting *Strickland*, 466 U.S. at 694). The question at its core is "'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

## A. Failure to Communicate

The Petitioner testified at the post-conviction hearing that he met with trial counsel only twice: once when counsel was first appointed and once for ten minutes on the day before trial. He also testified that trial counsel did not review discovery with him. Trial counsel, on the other hand, testified that he met with the Petitioner numerous times, that the Petitioner disappeared for a period of time while trial counsel made strenuous efforts to find him, and that he reviewed discovery with the Petitioner.

The post-conviction court credited the testimony of trial counsel, and its credibility determinations are binding on appeal unless the evidence preponderates otherwise. *Kendrick*, 454 S.W.3d at 457. Accordingly, we conclude that trial counsel was not deficient in failing to meet with the Petitioner. Neither has the Petitioner articulated how the outcome of the trial would have been different had he consulted more extensively with trial counsel. Accordingly, the Petitioner is not entitled to relief.

## B. Pretrial Motions

The Petitioner alleges deficiency in trial counsel's failure to file certain pretrial motions. "In order to succeed in proving ineffective assistance of counsel with respect to counsel's failure to file a motion …, [a petitioner] must satisfy both prongs of the

*Strickland* test, showing that counsel's failure to file the motion was deficient and that the deficient performance prejudiced the defense." *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006). Accordingly, the Petitioner must demonstrate a reasonable probability that, had the motion been filed, the outcome of the proceeding would have been different. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("[T]he defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."); *Davis v. State*, 912 S.W.2d 689, 699-700 (Tenn. 1995) (concluding the petitioner had not shown that suppression of his statement would have affected the verdict); *Gary Randall Yarnell v. State*, No. E2004-01762-CCA-R3-PC, 2005 WL 1981471, at *5 (Tenn. Crim. App. Aug. 15, 2005) ("To prevail on either or both of these ineffective-assistance complaints, the petitioner must demonstrate that the motions were meritorious."). Accordingly, we examine the merits of the motions in evaluating the Petitioner's claims that he received ineffective assistance when trial counsel did not file pretrial motions.

### 1. Motion to Suppress

The Petitioner testified that trial counsel did not file a motion to suppress evidence related to his telephone, which he alleged was seized in violation of the Fourth Amendment to the United States Constitution. Trial counsel testified that the telephone was introduced at trial but that no data was obtained from the telephone. The post-conviction court found that the telephone was lawfully seized during a search incident to arrest.

The Petitioner must show a reasonable probability that, had the motion been filed, the outcome of the proceeding would have been different. *See Davis*, 912 S.W.2d at 700. Here, the Petitioner has presented no argument to support the conclusion that his motion to suppress would have been successful. The post-conviction court found that the telephone, which was used as collateral in the commission of the crime, was seized during a search incident to arrest, and the Petitioner does not dispute this. *See State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009) (noting that contraband may be seized in a search incident to arrest). The drugs were in the possession of police because the Petitioner delivered them to Officer Walters. Moreover, the evidentiary value of the telephone was marginal, since it was only introduced to support the testimony of Officer Walters that the Petitioner left a telephone in his vehicle as collateral prior to returning with cocaine. We conclude that the Petitioner has not demonstrated a reasonable probability of a different verdict had the motion been filed. He is accordingly not entitled to relief.

## 2. Evidentiary Hearing

The Petitioner testified that trial counsel did not file a motion for an evidentiary hearing, which he elaborated was to determine the chain of custody for the drugs. At trial, the State presented witnesses to testify regarding the chain of custody of the cocaine. The Petitioner has not shown that trial counsel's failure to move for a hearing to establish the chain of custody prior to trial was deficient, nor has he shown a reasonable probability that the proceeding would have had a different outcome had counsel done so. The post-conviction court properly denied relief.

## 3. Preliminary Hearing Transcript

The Petitioner asserts that trial counsel should have filed a pretrial motion to obtain a transcript of the preliminary hearing to impeach Officer Walters. However, he does not specify how the preliminary hearing transcript would have undermined Officer Walters's testimony. The Petitioner has made no argument that the failure to obtain the transcript affected the outcome of the proceedings. Accordingly, this issue is without merit.

## 4. Notice of Entrapment

The Petitioner argues that trial counsel was deficient in failing to file a notice of entrapment, thus waiving the defense. The record shows that trial counsel did not file notice pursuant to Tennessee Code Annotated section 39-11-505 and that at trial, the trial court informed trial counsel that he could not present an entrapment defense because he had not provided proper notice. At the post-conviction hearing, trial counsel testified that the Petitioner had told him that he did not intend to sell drugs to Officer Walters; instead, his plan was to ask Officer Walters for ten dollars and then to disappear with the money. Some evidence at trial supported this testimony, including the Petitioner's attempt to leave the vehicle with the money at the gas station, Detective Pilarski's testimony that someone was peeking out the back door of the house the Petitioner entered with the ten dollars, and the Petitioner's attempt to renege on the transaction and return a crumpled one-dollar bill to Officer Walters.

Trial counsel testified that he made a strategic decision not to pursue an entrapment defense because he did not think it would be successful due to the Petitioner's intent to commit theft.[2] Trial counsel stated that "as the trial developed" he "gave great

---

[2] We note that entrapment relates to the defendant's predisposition to commit the crime at issue, not some other, uncharged offense. *See State v. Blackmon*, 78 S.W.3d 322, 330 (Tenn. Crim. App. 2001) (observing that "'the defense is predicated on an unexpressed intent of Congress to exclude from its criminal statutes the prosecution and conviction of persons, otherwise innocent, who have been lured to

- 10 -

thought" to the entrapment defense but that the trial court observed he had not filed proper notice. Trial counsel stated, "However I did not do that simply because … [i]t came to light, through my conversations with [the Petitioner], that he intended to rob the individuals" and trial counsel did not believe that he could present the defense because the Petitioner was not acting lawfully. The trial record reflects that, during a break after the testimony of Office Walters and Detective Pilarski, the trial court asked trial counsel if he were trying to establish entrapment. Trial counsel responded, "No, ma'am. I haven't thought about it." The trial court responded that trial counsel could not attempt to argue entrapment because he had failed to file the requisite notice. The motion for a new trial alleged that "as the trial proceeded[,] it became apparent that the criminal defense of entrapment was available" and that the trial court erred in not allowing the defense to be presented. At the hearing on the motion for a new trial, trial counsel argued that he did not file notice because he was "unaware, based on my conversations with [the Petitioner], that that was available," and he asserted that he should have been permitted to file a late notice. The trial court noted that no request was made to allow late-filed notice, and it denied the motion for a new trial.

We observe initially that the Petitioner bears the burden of proving the facts demonstrating deficiency by clear and convincing evidence. Here, the post-conviction record is not entirely clear regarding whether the Petitioner told trial counsel prior to trial about his claim that he intended to abscond with the money and only sold the drugs under compulsion. The defendant's own statements and actions may determine or substantially influence the reasonableness of counsel's choices. *Felts*, 354 S.W.3d at 277. Because the record does not show that the Petitioner informed trial counsel of the factual basis for asserting entrapment, he has not demonstrated deficiency in trial counsel's failure to file a pretrial notice.

We also conclude that the Petitioner cannot establish a reasonable probability that a properly preserved entrapment defense would have changed the outcome of trial. Tennessee Code Annotated section 39-11-505 states:

> It is a defense to prosecution that law enforcement officials, acting either directly or through an agent, induced or persuaded an otherwise unwilling person to commit an unlawful act when the person was not predisposed to do so. If a defendant intends to rely on the defense of entrapment, the defendant shall give to the district attorney general a notice comparable to

---

the commission *of the prohibited act* through the Government's instigation'" (emphasis added) (internal quotations omitted) (quoting *United States v. Russell*, 411 U.S. 423, 451 (1973) (Stewart, J., dissenting)).

that required for an insanity defense under Rule 12.2 of the Tennessee Rules of Criminal Procedure.

Entrapment is a general defense, and reasonable doubt on the issue requires an acquittal. T.C.A. § 39-11-203(d); *State v. Shropshire*, 874 S.W.2d 634, 638 (Tenn. Crim. App. 1993). The State is not required to negate the defense. T.C.A. § 39-11-203(b). The rationale for the defense "is that public policy demands a purity of government and its processes which does not exist when law enforcement, in effect, manufactures the crime and the criminal as opposed to preventing the crime and apprehending the criminal." *Shropshire*, 874 S.W.2d at 638. "[I]nducement and predisposition are the crucial factors" in determining whether entrapment applies, and the trier of fact must focus on the subjective intent of the defendant. *State v. Shuck*, 953 S.W.2d 662, 666 (Tenn. 1997); *State v. Latham*, 910 S.W.2d 892, 896 (Tenn. Crim. App. 1995) (holding that the elements of the defense are "(1) law enforcement officials, acting either directly or through an agent, induced or persuaded a person to commit an unlawful act, and (2) such person was otherwise unwilling or had no predisposition to commit the unlawful act"). In other words, the court must distinguish between "the trap for the unwary innocent and the trap for the unwary criminal." *Blackmon*, 78 S.W.3d at 330.

> Factors relevant to determining a defendant's predisposition include the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by law enforcement officials; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense which was overcome only by repeated inducement or persuasion by law enforcement officials or agents; the nature of inducement or persuasion engaged in by law enforcement officials; and any other direct or circumstantial evidence that the accused was ready and willing to engage in the illegal conduct in question. In determining predisposition a court or jury should consider the totality of the circumstances.

*Shuck*, 953 S.W.2d at 670.

Here, the Petitioner had a record of previously selling drugs. While Officer Walters initiated the purchase, the Petitioner's motive was profit. There was some evidence that the Petitioner intended to abscond with Officer Walters's money instead of completing the sale. Officer Walters testified he thought there was a "good possibility" that the Petitioner intended to take his money at the gas station without delivering drugs. Detective Pilarski testified Officer Walters did not want to give the Petitioner the money at the gas station because "a lot of times" suspects would "just walk off with the money." He also stated that police pulled closer to Officer Walters's vehicle while the Petitioner

- 12 -

was making the telephone call because "it seemed like he was just trying to get the money and run." However, there is no evidence that law enforcement ever urged the Petitioner to complete the sale, only testimony that they attempted to prevent him from absconding with the ten dollars. Detective Pilarski testified that after Officer Walters discovered that the Petitioner had replaced his ten-dollar bill with a one-dollar bill, he said, "[W]here's my ten?" The Petitioner was faced with a choice of returning the money or delivering the drugs. He chose to deliver the drugs. The Petitioner did not accidentally and unexpectedly find rocks of crack cocaine in his pocket and then give them to law enforcement only because he was persuaded to do so.

The proof at trial showed that Officer Walters approached the Petitioner and that the Petitioner immediately agreed that he could procure Officer Walters drugs in exchange for ten dollars. He had numerous opportunities to abandon the transaction but chose not to do so, instead directing Officer Walters to stop the vehicle in a drug-free school zone so that he could deliver the cocaine. Moreover, while law enforcement understandably tried to prevent him from leaving with the ten dollars, there is no indication of "repeated inducement or persuasion." *Shuck*, 953 S.W.2d 662, 670; *see State v. Joseph E. Rainey*, No. M2012-02408-CCA-R3-CD, 2014 WL 931044, at *6 (Tenn. Crim. App. Mar. 11, 2014) (finding no prejudice from failure to raise entrapment because "nowhere on the recordings does law enforcement persuade or induce the defendant" and because the defendant had demonstrated a predisposition to commit the crime). When Officer Walters asked for the return of his "ten," the Petitioner, rather than returning the money, chose to deliver crack cocaine. The Petitioner did not "evidence[] reluctance to commit the offense which was overcome only by repeated inducement or persuasion by law enforcement officials or agents" but instead "was ready and willing to engage in the illegal conduct in question." *Shuck*, 953 S.W.2d at 670. We cannot say that there is a reasonable probability that the Petitioner would have obtained a different result had proper pretrial notice been given and had the defense been raised.

### C. Failure to Investigate

The Petitioner also asserts that his trial counsel failed to investigate or call witnesses on his behalf at trial. The Petitioner elaborated that several employees at a transitional housing organization and a rehabilitation facility could have testified that he telephoned them immediately prior to the arrival of Officer Walters and that he was waiting for a bus rather than lingering on the street in hopes of completing a drug transaction.

However, as the post-conviction court noted, these witnesses were not presented at the post-conviction hearing. When a claim of ineffective assistance of counsel is premised on counsel's failure to interview or call witnesses, the witnesses must be

- 13 -

presented at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "'As a general rule, this is the only way the petitioner can establish that … the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.'" *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (quoting *Black*, 794 S.W.2d at 757). This is because the court cannot speculate as to what a witness's testimony might have been. *Black*, 794 S.W.2d at 757. Presenting the witness allows the post-conviction court to determine whether that witness's testimony would have been credible, material, and admissible. *Pylant*, 263 S.W.3d at 869-70. Accordingly, the Petitioner has failed to establish prejudice. We further note that the testimony that the Petitioner claims would have come from the witnesses does not relate to the commission of the offense. The Petitioner may have been waiting for a bus, but he proceeded to sell cocaine to Officer Walters after Officer Walters approached him. Accordingly, the testimony, even if presented, would not have established a reasonable probability of a different outcome. The Petitioner is not entitled to relief.

### D. Failure to Advise the Petitioner Regarding his Decision Not to Testify

The Petitioner alleges that trial counsel performed deficiently by not discussing the Petitioner's right to testify prior to trial and by failing to exclude the Petitioner's prior convictions as impeachment evidence. Trial counsel testified that he and the Petitioner discussed the ramifications of the Petitioner giving testimony on several occasions, and the record reflects that trial counsel filed a motion to exclude evidence of the Petitioner's prior convictions. The post-conviction court, in considering this issue, made a credibility determination in favor of trial counsel, and we will not disturb this determination on appeal. Accordingly, the Petitioner has not demonstrated that his trial counsel performed deficiently.

### CONCLUSION

Based on the foregoing, we affirm the post-conviction court's denial of relief.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 14 -